## Case No. 9,157.

### MARTIN v. BARTOW IRON WORKS.

[35 Ga. 320.]

District Court, N. D. Georgia.   Sept. Term, 1867.

PLEADING AT LAW—DUPLICITY—PLEAS IN BAR—DEMURRER—CONTRACTS UNDER SEAL—FAILURE OF CONSIDERATION—ILLEGAL CONSIDERATION—HIRE OF NEGROES.

[1. A demurrer to a plea on the ground that it is double "in this, that it contains several distinct matters of defence, and also that said plaintiff cannot take or offer any certain issue upon said second plea," held insufficient, for failure to point out the particulars in which the duplicity consists.]

[2. In Georgia both a total and a partial failure of consideration may be set up as a defense to writings commonly known as sealed notes or single bills.]

[3. To an action upon a sealed note made in January, 1864, defendant set up, by one of his pleas, a failure of consideration in this, that the note was given for the hire of twenty negroes, claimed by the plaintiff at the time of said hiring as slaves, but who were in fact free under the laws of the United States and the proclamation of the president. Held, that the plea showed no failure of consideration, as it did not appear but that the negroes may have first hired themselves to plaintiff and the latter transferred their labor with their consent to defendant, or that plaintiff may have acted as their agent in the hiring and taken the notes in trust for them.]

[4. Held, further, that a similar plea alleging that the consideration was illegal in that the contract was in violation of the letter and spirit of the laws of the United States and the president's proclamation, was bad, because there was no legal distinction between the plaintiff's hiring these men to defendant and the men hiring themselves to defendant, there being no averment that they did not consent to be so hired, or that the contract was not performed by plaintiff.]

[5. A plea that the contract was made for the hire of negroes as slaves, and that it was part of the consideration of the contract that defendant was to remove said negroes away and keep them away from the territory within the lines of the Federal army for the purpose of preventing their liberation from their former state of

servitude, held good as showing an illegal consideration, as the intent to prevent liberation was contrary to the settled policy of the government, and wicked in itself.]

[6. A plea that a note sued on was given with the express agreement that payment was to be made in Confederate treasury notes, and that said notes were prohibited by law to circulate, is bad, for plaintiff, having agreed to receive such notes in payment, has no right to ask a judgment for the amount of the note in "money."]

[This was an action at law by Ann V. Martin against the Bartow Iron Works, to recover money upon a sealed note. Heard on demurrers to the several pleas filed by the defendant.]

Hammond. Mynatt & Welborn, for plaintiff.
Brown & Pope, for defendant.

ERSKINE, District Judge.   This is an action of debt brought by the plaintiff against the defendant on a sealed instrument, of which the following is a copy: "$3,000.   On or before the 25th day of December next, I promise to pay Ann V. Martin, or order, three thousand dollars, for value received, as witness my hand and seal. Allatoona, January 6th, 1864.   (Signed)   T. J. Hightower, (L. S.) Supt. Bartow Iron Works."

To this action defendant pleaded nine pleas. The first was withdrawn. Replications were filed to the fifth and sixth, and issue joined. Special demurrers—several of which contained substantial objections also—were put into the second, third, fourth, seventh, eighth and ninth pleas. Defendant, in his second plea, alleges a total failure of consideration, and sets up affirmatively that the promise was made to the plaintiff in consideration of the hire of twenty negro men to work for defendant at the Iron Works in Bartow county, Georgia, for the year 1864, and that it was agreed, as a part of the contract of hiring, that if the Federal army approached near said county, defendant was to remove these hired men and their families, at the expense of plaintiff, and that no hire should be paid for the time lost by reason of said removal. Defendant then avers that the contingency thus provided for happened, and that he removed them to Macon, Georgia, and that there they were taken possession of by the authorities of the so-called Confederate states, and that he received no hire nor other benefit from their services.   The third plea alleges a partial failure of consideration; but it is in all other respects substantially like the preceding one.

The demurrer to the second plea presents the following objections: That the plea is double in this, that it contains several distinct matters of defence, and that plaintiff cannot take or offer any certain issue upon said plea.   Also, that defendant attempts to set up and plead a failure of consideration, and that the matters therein contained, in manner and form as therein pleaded, are not sufficient in law to show a failure of consid-

eration, and that plaintiff is not, by law, bound to answer the same. Then follows the usual, but (I apprehend) useless formula, that the plea is inartificially pleaded, and is in other respects uncertain. The objections taken in the demurrer to the third plea are in language similar, and are stated substantially in like manner as those to the second plea.

Before giving the opinion of the court on the legal sufficiency or insufficiency of the pleadings in this case, I trust I may not be deemed obtrusive by the bar if I state, briefly, that the long and verbose manner in which pleadings are frequently drawn is unnecessarily laborious to the draftsman and fatiguing to the reader. Take, for example, the precedent for a general demurrer, as printed in the earlier editions of Chitty, and in other works on pleading, and it will be found attenuated to some dozen or fifteen lines, whereas, it would be as sufficient by the rules of good pleading, as understood by the fathers of the law, and equally as intelligible, if set forth in two or three. A general demurrer in the following form would, I apprehend, be sufficient in the case under consideration: "And the plaintiff, by her attorneys, Hammond, Mynatt and Welborn, says that the second, third, fourth, seventh, eighth and ninth pleas are not sufficient in law." Vide Steph. Pl. (8th Am. Ed.) 44. And I will here take occasion to repeat, concisely, what I said more at large in the case of Scott v. Planters' & Mechanics' Bank [unreported], that, while I have the honor to preside in this court, I will discourage, nay, discountenance, all the delicately cunning and curious devices that have crept into the science of pleading. The law, says Lord Coke, "speaketh by good pleading," and the day has arrived when this wise axiom of that great master of the common law is to be interpreted liberally. This is an age of progress and utilitarianism in law as in other sciences, and it is therefore high time that the subtleties, verbosities and useless disputations of the ancient pleader give way to common sense and common reason.

A general demurrer enables the party to assail every substantial imperfection in the pleadings of the opposite side without particularizing any of them in his demurrer; but if he thinks proper to point out the faults, this does not vitiate it. A special demurrer goes to the structure merely, and not to the substance, and it must distinctly and particularly specify wherein the defect lies; and, indeed, the statutes 27 Eliz. and 4 & 5 Anne, as it is said, oblige the party demurring to lay, as it were, his finger on the very point, otherwise the demurrer may not be noticed. 1 Salk. 219; Wils. 219; Snyder v. Croy, 2 Johns. 428. When a party demurs specially, he may, in argument, attack substantial errors.

The first point made in the demurrer to the second plea is, that it "is double, in this, that it contains several distinct matters of defence; and, also, that said plaintiff cannot take or offer any certain issue upon said second plea." It is an ancient and well settled rule that, if a pleading be double, it is bad on special demurrer; but the imperfection must, as we have seen, be pointed out in the demurrer. It is not sufficient to say that the plea is double, or that it contains two or several distinct matters, but the pleader must specially show wherein the duplicity consists (1 Tidd, Prac. 694); for, by pointing out the fault, the adverse party may amend, if he choose, or demand the judgment of the court on its sufficiency.

The objection for doubleness taken to the second plea has, and in like manner, been also taken to the third. This making the law equally applicable to the one as to the other, both may be passed upon together. Has the plaintiff, in this part or division of the demurrers to these pleas, or to either of them, come within the letter or spirit of the rule laid down? I think not. No duplicity—if there be any in one or both of these pleas—has been pointed out in the demurrer or disclosed in the argument.

Another objection—and it goes to the substance—is taken to the second and third pleas, namely: that defendant has attempted to set up in the second a total failure of consideration, and in the third a partial failure. And Mr. Mynatt, in his argument, contended that neither of these defences could be pleaded to a specialty. Such, doubtless, is the rule of the common law, as generally understood in England; but with us it has, in several of the states, been changed, or modified, by statutes; while in others, learned courts have, in a greater or less degree, relaxed this rigid rule, that substantial justice may be done speedily and with as little technical litigation as possible, and without circuity of action.

Whether the writing sued on in this action has all the attributes of the specialty of the common law, is not a question directly before the court for determination. The writing was executed in Georgia, and the contract was to be performed here; and the instrument being of a peculiar character, and not strictly speaking commercial paper, governed by the law merchant—though the promise is absolute, payable to order, and the sum certain—it ought to be given effect to and adjudged agreeably to the local law, and the construction given to such instruments by the local tribunals. Swift v. Tyson, 16 Pet. [41 U. S.] 1.

The distinction between specialties and simple contracts should be carefully preserved by the courts when the dignity of those contracts has not been interfered with by legislative enactments; for, in the payment of debts of deceased persons, and in other cases, the common law makes a distinction; but by the 25th section of the act of 1799 (Cobb's Dig. 1135), promissory notes and other liquidated demands are made of equal dignity with the bonds and other specialties. The act of December 26, 1836 (Cobb's Dig. 490),

enables defendants to give in evidence a partial failure of consideration upon any contract, provided that it be pleaded only in such cases and under such circumstances, and between such parties as would now allow and admit the plea of total failure of consideration.

Albertson v. Holloway, 16 Ga. 377, was a suit on an instrument, in nearly every respect, like this. The defendant pleaded, among other defences, a partial failure of consideration. Plaintiff objected on the ground that no fraud or illegality was alleged in the contract, the same being under seal. The court below sustained the objection. A writ of error was taken, and the case went to the supreme court of the state, and it reversed the judgment.

The opinion of the court was delivered by Starnes, J., who, after commenting on the anomalous status of the instrument, used the following language: "Yet," said the judge, "we know that the rule we have been considering, has not been applied to ordinary promissory notes, but it has been the immemorial practice in our state to allow pleas of total failure of consideration (and of partial failure since the act of 1836) to suits on such notes."

From this it would seem to be the settled law of this state, that total as well as partial failure of consideration affords a good defence to writings, which are commonly known as sealed notes or single bills. And I can see no sound reason why matters which destroy the demand, as well as those which go to diminish it, may not be pleaded in defence of this action.

Withers v. Green, 9 How. [50 U. S. 213]. Action of debt on a single bill. This cause was brought by writ of error from the circuit court of the United States for the Southern district of Alabama, to the supreme court. The law of that state places bonds, or any writing under seal, on the footing of promissory notes, and allows defendants, by special plea, to impeach, or go into the consideration of such in the same manner as if the writing had not been sealed. The opinion of the supreme court was pronounced by Mr. Justice Daniell, who, after reviewing the English and American cases, showing a relaxation of the old rule, and allowing the defendant to obtain justice in this way instead of driving him to a cross action, said: "But, however, the rule laid down by the courts of England, should be understood, it has repeatedly been decided by learned and able judges in our country, when acting, too, not in virtue of a statutory license or provision, but upon the principles of justice and convenience, and with a view of preventing litigation and expense, that when fraud has occurred in obtaining, or in the performance of contracts, or when there has been a failure of consideration, total or partial, or a breach of warranty, fraudulent or otherwise, all or any of these facts may be relied on in defence by

a party when sued upon contracts, and that he shall not be driven to assert them, either for protection or as a ground of compensation, in a cross action." The doctrine here enunciated was approved in Van Buren v. Diggs, 11 How. [52 U. S.] 461; and again in Winder v. Caldwell, 14 How. [55 U. S.] 434.

The demurrers to the second and third pleas are overruled.

The fourth plea states that the consideration for the promise has entirely failed, in this, that the note was given for the hire of twenty negro men, claimed by the plaintiff at the time of the said hiring as slaves, but were in fact free, having been so declared by the laws of the United States, and proclamations of the president thereof, before the time of said hiring.

Plaintiff in the demurrer to this plea says, that the matter and things therein contained, in manner and form as set forth, do not amount in law to a failure of consideration. Also, that the plea consists altogether of matter of law upon which no apt or material issue can be taken; and that the plea is argumentative, uncertain and insufficient. The remainder of the demurrer goes to other matters of form generally.

The facts set forth in this plea do not constitute a failure of consideration. Admit that the plaintiff did claim these men as slaves—notwithstanding they may have been free—this would not affect the contract; for they may have first hired themselves to plaintiff, and by their consent, express or implied, she may have transferred their labor to defendant, or plaintiff may have acted as their agent in hiring them to defendant, and may have taken the notes payable to herself in trust for them. Besides, there is no averment whatever that the contract was not fulfilled on the part of the plaintiff.

The demurrer to the fourth plea must be sustained.

The seventh plea says that the consideration for the promise is illegal, for that it was made for the hire of negroes at Bartow county, Georgia, in January, 1864, and that the contract was in violation of both the letter and the spirit of the laws of the United States, and the proclamations of the president thereof. Plaintiff's demurrer alleges that the matters above contained do not support the plea of illegal consideration. The remainder of the demurrer is addressed to the structure of the plea.

The demurrer is well taken to the substance of this plea. The hiring of these men by the plaintiff to the defendant, in the state of Georgia, in 1864, was not in violation of any law of the United States, or any proclamation of the president. And indeed the president, in the emancipation proclamation, dated January the first, A. D. 1863, recommended to the freedmen, "that in all cases, when allowed, they labor faithfully for reasonable wages." 12 Stat. 1268. I per-

ceive no legal distinction in the plaintiff's hiring these men to defendant, and the men hiring themselves to defendant. No averment is made that they did not consent to be so hired, nor that the contract is unperformed on the part of the plaintiff.

The eighth plea alleges that the consideration for the promise was illegal—being contrary to the public policy of the government of the United States; that it was made for the hire of negroes as slaves, and defendant avers that it was a part of the consideration of the contract, that the defendant was to remove said negroes, and keep them removed from the territory within the lines of the Federal army, with a view and design of preventing their liberation from their former state of servitude, and that, previously to the time of the making of said contract, the government had determined upon, adopted and established the policy of liberating said negroes from their former state of servitude.

Demurrer to this plea—and the causes alleged in it—are, that the plea contains no sufficient allegation of illegal consideration; and that no matter of fact has been alleged or shown in bar of the action, but that it consists altogether of matters of law, and that it is argumentative, evasive, double, etc.

Such is substantially the language of the eighth plea and of the demurrer to it.

Ex-Gov. Joseph E. Brown, who argued for defendant, cited and commented on the following authorities: [Marshall v. Baltimore & O. R. Co.] 16 How. [57 U. S.] 336; [Hannay v. Eve] 3 Cranch [7 U. S.] 242; [Miles v. Caldwell] 2 Wall. [69 U. S.] 45; [Chirac v. Reinicker] 11 Wheat. [24 U. S.] 288; 1 Story, Eq. Jur. 293a, 293b; 3 Kelly, 181; [Bartle v. Nutt] 4 Pet. [29 U. S.] 188; [Lessieur v. Price] 12 How. [53 U. S.] 63; [Ranall v. Howard] 2 Black [67 U. S.] 585; Dana, Wheat. Int. Law, 305, note; Add. Cont. 93-96; Chit. Cont. 586; Smith, Lead. Cas. 423.

Mr. Pope, in his brief, referred to Steph. Pl. 256, 424, 260; [M'Niel v. Holbrook] 12 Pet. [37 U. S.] 84; [Shankland v. Mayor, etc., of Washington] 5 Pet. [30 U. S.] 397; Gould, Pl. 421.

Counsel for plaintiff presented the following authorities in support of the demurrer: Steph. Pl. 348, 384, 387; Chit. Cont. 570, 575; 2 Kent, Comm. (10th Ed.) 636, note.

The court will direct its attention to the first point taken in the demurrer. The plea is, perhaps, too general in its structure, and otherwise deficient in form, if tested by the rules of pleading; but if the formal faults be not specially pointed out, it must be adjudged certain to a common intent, this being all that is required in a plea in bar.

In resolving this plea, the court must look to its language alone for the meaning of defendant, and none of the other pleas pleaded, nor any part of them, can be invoked to aid in the interpretation and construction of this, or in explaining the import of any word or phrase used in it. Each plea must stand on its own merits. If this contract when entered into was in violation of the policy of the government, it is vicious and invalid and can find no favor in the courts. Mr. Chief Justice Marshall, in Armstrong v. Toler, 11 Wheat. [24 U. S.] 258, said: "No principle is better settled than that no action can be maintained on a contract the consideration of which is either wicked in itself or prohibited by law." And in Tool Co. v. Norris, 2 Wall. [69 U. S.] 45, Mr. Justice Field in speaking of contracts void, as against public policy, said: "The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of the courts of the country."

The gist of the agreement of the parties as stated in the plea—and this statement as pleaded is admitted by the demurrer, is "that defendant was to remove said negroes away, and to keep them removed from the territory that was within the lines of the Federal army, with a view and design of preventing the liberation of said negroes from their former state of servitude." It needs no argument to show that this agreement was in contravention of the previously settled policy of the government, and wicked in itself.

Demurrer not sustained.

The ninth and last plea is as follows: That the promise aforesaid was illegal and void in this, that it was the express understanding and agreement at the time said promise was given, that the payment of the amount so promised should be made in what was denominated Confederate treasury notes, which currency defendant says was prohibited by law to circulate. Verification.

The demurrer states that the plea is double, containing several and distinct matters of defense, and that no certain issue can be taken thereon, and that the matters and things contained in the plea as therein set forth, are insufficient in law to show illegality of consideration, etc.

In my opinion it is not necessary to decide whether the promise is illegal or whether Confederate treasury notes were prohibited by law to circulate, for it is alleged, that plaintiff agreed to receive these notes for the amount promised. This being so, plaintiff cannot come into this court and ask a judgment for money. Clearwater v. Meredith, 1 Wall. [68 U. S.] 25.

Demurrer overruled.

Judgment nil capiat on the second, eighth and ninth pleas; and so far as the defense goes set up in the third plea, there must be judgment of nil capiat.