DeVaughn vs. Minor et al.

DeVaughn vs. Minor et al.

77 809|
117 896

[Bleckley, C. J., and Hall, J., being disqualified, Judges Boynton and Jenkins, of the Flint and Ocmulgee circuits, were appointed to preside in their stead.]

1. While it is true that, although there may be no grant, by deed, of an easement or other incorporeal hereditament, yet if a party has been led to incur expense in consequence of having obtained a parol license from another to do an act, and the license has been

acted upon, the other party cannot be permitted to recall his license and treat the other as a trespasser for having done the very act; yet if there be no license, or act from which a license will necessarily follow, a person erecting a dam so as to flood the land of another, is a trespasser and acts at his peril. Nor can expenditures by a trespasser, whether made prior or subsequent to the act of trespass, strengthen his position or weaken that of the person upon whom the trespass is committed. Therefore where there was no proof of a license to erect such a dam or flood the land, evidence of such expenditures should not have been admitted over objection.

2. All injury to health is special and necessarily limited in its effect to the individual affected, and is, in its nature, irreparable. It matters not that others within the sphere of the operation of the nuisance, whether public or private, may be affected likewise. If the pond of the defendants, if reproduced, would be a nuisance, public or private, and would, to a reasonably certain degree, affect injuriously the health of the complainant, he would be entitled to have a remedy by injunction; and this would be true, regardless of whether the damage would occur from the "situation of his house, the topography of the country, or other cause peculiar to him," as stated in the charge.

(a.) The charge of the court on this subject was erroneous.

February 26, 1887.

Easements.   Nuisance.   Improvements.   Evidence. Injunction.   Damages.   Before Judge FORT.   Macon Superior Court.   May Term, 1886.

Reported in the decision.

GUERRY & SON, for plaintiff in error.

E. A. HAWKINS; E. G. SIMMONS; JOHN W. HAYGOOD; W. H. FISH, for defendants.

JENKINS, Judge.

This was a bill brought in 1883, by DeVaughn against Minor, surviving partner of Drumright & Minor, and the executors of Drumright, praying an injunction against the rebuilding of a mill-dam across Beaver creek, which

had then recently been washed away, and for the recovery of damages alleged to have been sustained by the complainant, growing out of the flooding of a portion of his land by the defendant's mill-pond. The chancellor granted a temporary injunction. On final hearing, the jury rendered a verdict for the defendants. Complainant made a motion for new trial on the grounds therein stated, which was overruled, and he excepted.

The bill makes substantially the following case : Beaver creek runs through a portion of complainant's premises. In 1880, Drumright & Minor erected across said stream a dam within one hundred and fifty or two hundred yards of complainant's residence, whereby the water of the creek was ponded and the swamp contiguous thereto overflowed. The land thus flooded was, in part, the property of complainant, and the erection of the dam and flooding of the land was without his consent and against his wishes. The effect of the ponding of the water was to produce malaria, which seriously affected the health of complainant and his family and caused irreparable injury, and amounted to a nuisance. On June the 24th, 1883, the dam was broken and destroyed by heavy rains, the water in the pond thereby let off, and the land of complainant relieved of overflow. The bill further alleged that Minor, the surviving partner of Drumright & Minor, and the executors of Drumright, Drumright having, in the meantime, died, were arranging to rebuild the dam and thereby again flood the land of complainant and reproduce the source of danger to the health and life of complainant; and that the defendants were insolvent and unable to respond in damages.

The defendants, by their answer, denied the material allegations, admitting the flooding of a fractional part of an acre of complainant's land, alleged to be worthless. The defendants, by their answer, further claimed that the pond, so far from being a nuisance, materially benefited the health of complainant and of the community, and that

the sickness which prevailed there was attributable to natural causes, such as lagoons, lakes and swamps in the vicinity.   While denying that the former dam caused the land of complainant to overflow, and that the effect of rebuilding it would be to overflow his land, they claimed the right to flood as much thereof as might be necessary under a parol license, and that, acting under such license, Drumright & Minor had expended large sums of money in making valuable improvements and in the purchase of valuable and costly machinery, etc., and that complainant, by reason of the facts, was estopped from interfering with the enjoyment and use of the easement so granted.

The evidence produced at the trial disclosed the fact that the mill of the defendants and the pond, until let off by the breaking of the dam, were situated in the town of Montezuma, about one mile from Flint river, and that in the immediate vicinity of the town were lagoons, lakes, marshes and other prolific sources of malaria.   The evidence was conflicting, to some extent, as to whether and to what extent the pond of defendants, while existing, contributed to the sickness of the locality.   Taken all together, it made a strong case for the complainant, and seemed to establish, with reasonable certainty, that the pond was a potential factor in producing malarial diseases while it existed.   But inasmuch as there is to be another trial, we leave the jury to pass upon that question upon a rehearing of all of the evidence.

1. On the trial of the case, the defendants offered to prove the cost of putting up the mill, machinery and "all the improvements, taking into consideration the dam." To this complainant objected.   The court overruled the objection, and proof was made that large sums of money, exceeding ten thousand dollars, had been expended by the defendants in the erection of the mills, putting in machinery, constructing dam, etc.   The admission of this evidence, and the refusal of the court to rule same out on

motion, constitute one of the grounds in the motion for new trial.

We think the admission of this evidence was error and calculated to injure the complainant and to mislead the jury. It nowhere appears from the evidence that defendants were ever authorized to construct the dam across the stream or to pond the water thereof to any extent. On the contrary, the evidence, including that of the defendant, Minor, establishes the fact that no license was ever given to erect the dam or to flood the land of complainant. Complainant appears to have made positive objection. That the erection of the dam in 1880 caused the backing of the water, and, as a consequence, the pond, there can be no serious doubt. The evidence further discloses the fact that the only license ever granted by complainant to the defendants was to cut a flume or ditch, 20 or 30 feet long, through a portion of his land. The effect of cutting the flume, so far from ponding the water, was intended to have the contrary effect, that of conducting it off. It was admitted by the defendant, Minor, on the trial, that no license had ever been granted, save the right to cut the flume for the purpose of conducting the water to a given point. It is true that he testified that, in his opinion, the effect of cutting the flume was to flood a small part of complainant's land. He gave no reason for this opinion, nor do we understand how such effect could follow. It further appears from the evidence that all of the substantial improvements, including the buildings, machinery, etc., had been put up at a time prior to the erection of the dam, and most, if not all, of them before complainant consented to the cutting of the flume. So it seems that defendants did nothing, under the license nor in consequence thereof, by way of incurring expense nor in making outlays of money. The expense of buildings, machinery and other improvements had already been incurred, and to allow proof of their value, to work an estoppel, was error.

We recognize the rule that even though there be no grant, by deed, of an easement or other incorporeal hereditament, yet if a "party has been led to incur expense in consequence of having obtained a (parol) license from another to do an act, and the license has been acted upon, that the other party cannot be permitted to recall his license and treat the first as a trespasser for having done the very act." If, however, there be no license, nor act from which a license will necessarily follow, a person erecting a dam so as to flood the land of another is a trespasser and acts at his peril.* Expenditures by a tresspasser, whether made prior to or subsequent to the act of trespass, cannot strengthen his position nor weaken that of the person upon whom the trespass is committed. The evidence upon this point having been improperly admitted, over complainant's objection, should have been ruled out on motion. Under the view we take of it, however, it is immaterial whether the improvements were made before or after the complainant consented to the cutting of the flume, inasmuch as that consent did not authorize the defendants to flood the land, and the flooding which afterwards occurred was produced by a different cause, the erection of a dam, for which there was no license, as is conceded by the defendant, Minor.

2. Complainant, in his motion for new trial, further insists that the court erred in its supplemental charge to the jury. It appears from the record that after the jury retired to their room, and after having had the case under consideration all night and a part of the evening before, the presiding judge had them called into court and inquired if he could relieve them on any question of law. The jury, in response, requested the court to charge them on the question of public and private nuisances as applicable to the case. Counsel on both sides consented to their being recharged. In delivering the supplemental charge, the court

---

*On revocation of license, and effect of acting on, see 28 Am. Dec. 711; 16 *Id.* 497; 26 *Id.* 739; 16 *Id.* 502; 18 Am. R. 455; 12 *Id.* 80.

read to the jury sections 2997, 2998 and 3000 of the code, and added, " If you believe from the evidence that the pond would be a public nuisance, that is, one that damages all persons that come within the sphere of its operation, though it may vary in its effects on individuals, the complainant would not be entitled to a verdict, unless he should show you that he would suffer special damage in which the public would not participate. If you should believe the pond would be a public nuisance, causing damage to all living within the sphere of its operation, yet, from the situation of DeVaughn's house, from the topography of the country, or other cause peculiar to him, he suffers special damage, such as that the public generally would not suffer, then he would be entitled to a verdict.

" This form of proceeding is allowable to prevent a private nuisance of the character complained of, whereas a public nuisance is to be abated in a different manner, unless it causes special damage, as just stated. Whether the pond would be a public or private nuisance, if its effects would be to cause special damages or injury to the health of DeVaughn that would not be participated in by the public, he would be entitled to a verdict. If, however, it would be a public nuisance, producing no special damage to him, except such as would be participated in by the public coming within the sphere of its operation, then he would not be entitled to recover on that ground. The question of nuisance, and whether it be public or private, or public with special damage, as before defined, is a question of fact for you."

The court should have charged §3002 of the code, which provides that, "Where the consequences of a nuisance about to be erected or commenced will be irreparable in damages, and such consequences are not merely possible, but to a reasonable degree certain, a court of equity may interfere to arrest a nuisance before it is completed." All injury to health is special and necessarily limited in its

effect to the individual affected and is, in its nature, irreparable. It matters not that others within the sphere of the operation of the nuisance, whether public or private, may be affected likewise. If the pond of the defendants, if reproduced, would be a nuisance, public or private, and would to a reasonably certain degree affect injuriously the health of complainant, he would be entitled to the relief sought by injunction. And this would be true, regardless of whether the damage would occur from the "situation of his house, the topography of the country, or other cause peculiar to him." If one live within the sphere of the operation of a nuisance about to be erected or commenced, affecting health, and the injurious consequences are not merely possible, but to a reasonable degree certain, he is entitled individually to preventive relief, even though the public would be likewise affected. That the jury found trouble in applying the law governing this important question in the case, is evident from their request to be recharged in relation thereto. The charge was calculated to mislead.

Judgment reversed.