SUTTON *v.* ADAMS, commissioner, *et al.*

No. 10166. December 17, 1934. Rehearing denied January 21, 1935.

*Paul L. Lindsay,* for plaintiff.

*M. J. Yeomans, attorney-general, J. T. Goree, B. D. Murphy, D. M. Parker,* and *J. J. E. Anderson,* for defendant.

BELL, Justice. ■ A general demurrer to a petition is one which attacks the sufficiency of the petition as a whole, contending that it does not state a cause of action for any relief. A demurrer which thus assails a petition in its entirety is a general demurrer, notwithstanding it may allege specific reasons why the petition as a whole should be dismissed. *Martin* v. *Bartow Iron Works,* 35 *Ga.* 320, 323 (Fed. Cas. No. 9157) ; *Stovall* v. *Caverly,* 139 *Ga.* 243 (77 S. E. 29). Measured by this rule grounds 4 and 5 of the demurrer filed in this case were both general in nature, challenging the sufficiency of the entire petition for reasons stated. Such a demurrer should be overruled if the petition states a cause of action for any part of the relief prayed for. "A general demurrer goes to the whole pleading to which it is addressed, and should be overruled if any part thereof is good in substance." *Beasley* v. *Anderson,* 167 *Ga.* 470 (146 S. E. 22). Ground 23 of the demurrer was directed to a particular paragraph in which the plaintiff alleged that he would be helpless and without remedy to collect his salary unless the court of equity should intervene and protect his right in the premises. As will be seen from the allegations and prayers, the object of the petition was not alone to protect the plaintiff in the collection and enjoyment of his salary, but one of its purposes was to enjoin two of the defendants from interfering with the plaintiff in the discharge of the duties of his office as State Veterinarian. It is clear that ground 23 of the demurrer did not reach the question of whether the petition stated a cause of action for relief against such interference. Counsel for the defendants in error invoke the rule, however, that where a demurrer to a petition is based upon several grounds and the court sustains some of them and dismisses the petition, the judgment will be affirmed whether these grounds were valid or not, if the

petition was in fact fatally defective as failing to set forth a cause of action. *Crittenden* v. *Southern Home B. & L. Asso.*, 111 *Ga.* 266 (36 S. E. 643). For present purposes, we may assume that this is a correct rule of practice, and, upon that assumption, will observe it in the instant case. Compare *Linder* v. *Whitehead*, 116 *Ga.* 206 (42 S. E. 358).

■ Was the petition subject to general demurrer and dismissal as a whole, as contended in ground 4 of the demurrer, because the plaintiff had an adequate remedy by mandamus to compel the proper officer to include the plaintiff's name and salary in the budget? Mandamus would be the proper remedy to enforce the plaintiff's right, if any, to have his name and salary placed upon the budget. With even more certainty it may be said that a court of equity should not enjoin the State auditor from receiving or approving a requisition for salaries and expenses for the department of agriculture, or from transmitting the budget to any other officer or department, merely because the plaintiff's name may be improperly omitted therefrom, such requisition and budget being presumably correct in other respects. So far as the question of salary is concerned, the plaintiff is seeking a judgment to compel performance of an alleged official duty, and we thoroughly agree with the trial judge that injunction would not be the remedy for such relief. "Mandamus is strictly a legal remedy to compel action, while injunction is a remedy to prevent action." *Atlanta Title & Trust Co.* v. *Tidwell*, 173 *Ga.* 499 (3) (160 S. E. 620, 80 A. L. R. 735). But, notwithstanding this, the petition is not subject to dismissal as a whole, if it alleges sufficient ground for the grant of an injunction with respect to other matters of which complaint is made in the petition. The trouble with ground 4 of the demurrer was that it was addressed to the petition as a whole, instead of attacking the specific parts relating to salary. Defendants' counsel have argued that the plaintiff could maintain no action for salary, because the legislative appropriation therefor was vetoed by the Governor. This does not become a question for decision in the present case, in view of our conclusion that even if there is salary payable, it could not be recovered in the manner attempted in this suit.

■ Ground 5 of the demurrer presented the contention that the plaintiff's exclusive remedy with respect to his office as State Veter-

inarian is a petition for the writ of quo warranto "to recover said office." This ground of the demurrer would treat the petition as showing upon its face that the plaintiff has been deprived of the office and has been supplanted by the defendants Adams and White. These contentions make it necessary to construe the allegations touching the plaintiff's status with regard to the office, and to consider the jurisdiction of a court of equity as related to the controversy between the plaintiff and the defendants Adams and White. Plaintiff alleges plainly that he is the State Veterinarian and that by an act of the General Assembly, approved August 28, 1931, he was constituted such officer for a term of 4 years from January 1, 1932. See Ga. L. 1931, p. 40, § 97. This court will take judicial cognizance of the enactments of the legislature. The plaintiff further alleged that he was duly appointed, qualified, and confirmed as such officer, and has been the State Veterinarian since July 11, 1927, "and has been continuously in office from said date up to and including the date of the filing of this petition;" "that he, as State Veterinarian, is a part of the department of agriculture;" and that he is "an officer filling an office created by law." The petition further alleged the following: "That G. C. Adams, as commissioner of agriculture, is seeking unlawfully and without authority or law to discharge your petitioner as State Veterinarian, and that in furtherance of this unlawful plan and purpose, he, on the 2nd day of January, 1934, employed and designated one W. E. White, one of the defendants aforementioned, as chief veterinary advisor, or some other unauthorized title, and sent the said W. E. White into your petitioner's office to take charge of the work delegated by statute to your petitioner, and caused notice to be sent to various employees of your petitioner as State Veterinarian to the effect that your petitioner was no longer in charge of the work delegated to him, your petitioner, by statute, and with instructions to said employees to take no orders from your petitioner thereafter whatsoever; that the said W. E. White, acting by and through the supposed authority granted to him by the said G. C. Adams as commissioner of agriculture, is undertaking to take over your petitioner's duties and illegally perform the duties, or attempt to perform the duties, delegated by statute to your petitioner, and as a result of said conduct of the said commissioner of agriculture, and the said W. E. White, your petitioner's work, as State Veterinarian,

58

is being completely stultified, and irreparable damage will flow to your petitioner and to the live stock and dairy industries of this State unless the unlawful interference with your petitioner be restrained and enjoined." "That W. E. White, who is undertaking to act and perform the duties of State Veterinarian, is doing so, wilfully and knowingly that his acts are unauthorized and in violation of law, and that his part in the above and foregoing plan is done knowingly and deliberately with intent to embarrass, humiliate and destroy your petitioner officially, to hinder your petitioner's work as State Veterinarian." The "foregoing plan" as referred to in this paragraph had been elsewhere stated in the petition as a "plan and scheme unlawfully conceived by the commissioner of agriculture and others to destroy . . petitioner as a State official, and . . to procure the abandonment of petitioner's important work to which he had dedicated himself as State Veterinarian." Whatever may be the real truth of the matter, these allegations were sufficient to show that *at the filing of the petition* the plaintiff was the incumbent in the office of State Veterinarian, in the physical possession of such office, and exercising the duties thereof. The petition does not show, as contended by the demurrer, that the plaintiff has been ousted or supplanted, and that another is in possession and control of such office. As to the defendants Adams and White the petition contained prayers which in effect sought injunction to prevent these defendants from actual physical interference with plaintiff in the possession and exercise of the duties of such office. The petition also prayed for general equitable relief.

In view of these allegations and prayers, can it be said that quo warranto was the plaintiff's remedy, and that equity should not intervene? Quo warranto is a remedy to "inquire into the right of any person to any public office the duties of which he is in fact discharging." Civil Code (1910), § 5451. It has been repeatedly held by this court that the writ of injunction can not be employed directly or indirectly as the procedure for trying the title to a public office (cf. *Moore* v. *Dugas,* 166 *Ga.* 493 (5), 143 S. E. 591); and we may assume in the present case that equity would not begin to adjudicate such question, even though it might take jurisdiction for other purposes. It has been often said that equity, when it assumes jurisdiction, will do so for all purposes and determine the

whole controversy instead of leaving the matter to be adjudicated piecemeal. In the present case, however, it is unnecessary to apply this principle, or to express any opinion as to whether it could be applied in a case of this sort. But, excluding all question of title, we can not say that the petition was *wholly* devoid of equity. Under the allegations made, the plaintiff was at least a de facto officer. *Hinton* v. *Lindsay,* 20 *Ga.* 746 (4) ; *Gunn* v. *Tackett,* 67 *Ga.* 725, 727. We refrain from any statement as to whether the plaintiff was a de jure officer, because any expression upon that question would relate to title. There are many decisions to the effect that an officer de facto in possession is entitled to equitable intervention, not to try title, but to prevent disturbance of such possession otherwise than by judicial process. In Ekern *v.* McGovern, 154 Wis. 157 (142 N. W. 595, 46 L. R. A. (N. S.) 796), the Supreme Court of Wisconsin held as follows: "An officer de facto, in good faith claiming the right to possession of an office, until the right de jure shall have been determined,—if in imminent peril of forcible disturbance by an adverse claimant or those acting in his support,— may maintain an action in equity to prevent such disturbance, and may, and should, have temporary injunctive protection pending determination of the right to permanent immunity from forcible dispossession," a number of decisions being cited in support of this statement. There were two dissenting opinions in that case, but, so far as this question was concerned, the dissenting opinions did not deny that injunction would rightly issue where the plaintiff is a de facto officer in possession, but argued that the plaintiff there did not show himself to be even a de facto officer. The opinions were most learned, and contained exhaustive discussions of the question as there under consideration. In Denison *v.* Brotherhood, 191 Iowa, 698 (182 N. W. 873), the Supreme Court of Iowa made the following pertinent observation: "There is a clear distinction in the authorities between the situation where an officer in the possession of an office is seeking, by injunctive process, to restrain interference with such possession, and the case where one out of office is seeking, by injunction, to oust an incumbent and obtain possession for himself. In the first instance equity will interfere and retain the possession of the incumbent lawfully in possession until the right to the office has been determined in proper proceeding. In the latter case equity will not interfere at the instance of

one who is not in possession and seeks, by injunctive process, to establish his right to an office and obtain possession thereof. The courts generally recognize the rule we have announced." The decision in that case quoted from 2 High on Injunction (2d ed.), § 1315, as follows: "While courts of equity uniformly refuse to interfere, by the exercise of their preventive jurisdiction, to determine questions relating to the title to office, they frequently recognize and protect the possession of officers de facto by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants. . . And the granting of an injunction in such case in no manner determines the question of title involved, but merely goes to the protection of the present incumbents against the interference of claimants out of possession, and whose title is not yet established." In approval of this statement it was said by the Supreme Court of Louisiana that "This doctrine is in the interest of social peace and order, and conforms to the object and policy of the law in all remedial provisions for the settlement of disputed rights, which always respect and maintain the status quo until the controversy shall be settled in orderly course of judicial procedure." Guillotte v. Poincy, 41 La. Ann. 333 (6 So. 507, 5 L. R. A. 403). For other cases to the same effect, see Casey v. Brice, 173 Ala. 129 (7) (55 So. 810); Fairbanks v. Superior Court, 17 Wash. 12, 48 Pac. 741, 61 Am. St. R. 893; Arnold v. Hilts, 52 Colo. 301, 121 Pac. 753, Ann. Cas. 1913E, 724, together with the numerous cases cited in Ekern v. McGovern and in Denison v. Brotherhood, supra. A study of these decisions will show that while quo warranto may be the exclusive remedy to settle the title to an office, the rule is one to be addressed to the claimant who is out of possession, in that he should resort to this remedy instead of invading the office by physical force, or by any personal intrusion. The principle is not one to be applied to a *de facto officer in possession,* as against an adverse claimant. In 46 C. J. 1007, § 215, it is stated: "It is a general rule of law that an injunction will not be granted to prevent a party from exercising a public office pending proceedings to determine his right thereto. The rule is applied as well where the petition is made by the attorney of the State, as where the application is made by a private citizen. On the other hand an injunction will be granted at the

instance of an incumbent of office to restrain a claimant for the office from interfering therewith until he has established his claim to the office in direct proceedings to try title." In 22 R. C. L. 454, § 113, the same principle is stated as follows: "Although proceedings by injunction can not be used as a means of determining disputed title to office, they may be properly used to protect the possession of officers de facto against the interference of claimants whose title is disputed, until the latter shall establish their title by the judicial proceeding provided by law. Hence a court of equity has jurisdiction to restrain a certain person from forcibly taking possession of the rooms, books and furniture pertaining to public office, and to restrain him from preventing one theretofore in possession of the office from continuing to perform the duties of the office. And it seems the rule that an action in equity will not lie to determine the title to an office does not preclude the making of such determination in equity in case of that being incidental to some matter or primary right which is a proper subject for equitable interference, and for which the court has taken jurisdiction and acquired jurisdiction of the parties." In Arnold v. Hilts, supra, it was held even that where an incumbent holding an office under a prima facie legal right has been actually ousted by private physical force, a court of equity may restrain the intruder from interfering with him in the performance of his official duties. In the opinion it was said: The plaintiff "was inducted into office peacefully and lawfully, and, under the facts as they exist here as between him and the defendant claimant, he should be allowed to vacate peacefully, or be lawfully removed, and, until such time comes, he should be protected by the courts in such possession."

The foregoing principles represent the weight of authority, and so far as they might apply to a case like the present they are in accord with the law of Georgia as stated in the Code, and have been recognized and applied by this court. "Equity jurisdiction is established and allowed for the protection and relief of parties, where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong, or relieving for injuries done." Civil Code (1910), § 4519. "Equity will not take cognizance of a plain legal right, where an adequate and complete remedy is provided by law; but a mere privilege to a party to sue at law, or the existence of a common-law

remedy not as complete or effectual as the equitable relief, shall not deprive equity of jurisdiction." Civil Code (1910), § 4538. "Equity, by a writ of injunction, may restrain proceedings in another or the same court, or a threatened or existing tort, or any other act of a private individual or corporation which is illegal or contrary to equity and good conscience, and for which no adequate remedy is provided at law." Civil Code (1910), § 5490. These provisions of the Code have been made a part of the statute law of Georgia and state in general terms the basis of equity jurisdiction in this State.

The petition in the present case was sufficient to show capricious and arbitrary action on the part of the defendant commissioner of agriculture, and under the plaintiff's allegations, which must be taken as true on demurrer, the misconduct charged can not be justified on the theory that the commissioner was acting within the sphere of his discretion as the head of the department of agriculture. While the averments do not in express terms charge the commissioner with capricious and arbitrary conduct, the petition is not open to any other construction in view of the specific facts alleged. See, in this connection, *Wright* v. *Hicks,* 15 *Ga.* 160 (3) (60 Am. D. 687) ; *Maynard* v. *Armour,* 138 *Ga.* 549 (5) (75 S. E. 582) ; *Davis* v. *Arthur,* 139 *Ga.* 75 (4) (76 S. E. 676). Under the rulings made in *Talmadge* v. *Sutton,* 175 *Ga.* 811 (166 S. E. 240), the petition stated a cause of action for injunctive relief. Although in that case, there was no extended discussion of the equitable principles involved, the decision there rendered is in harmony with the many adjudications by other courts to the effect that an incumbent in a public office may obtain the relief of injunction to restrain an illegal interference with performance of his duties.

Nothing to the contrary has ever been held by this court, with the exception of one decision, which is not authority; and this will now be demonstrated by an examination of the cases. In *Coleman* v. *Glenn,* 103 *Ga.* 458 (30 S. E. 297, 68 Am. St. R. 108), there was no allegation that defendants were interfering with the plaintiffs in the discharge of their duties as incumbents. The plaintiffs alleged that they were members of a county board of education, and that upon a recommendation of the grand jury the judge of the superior court had passed an order by which he undertook to remove them and appoint others in their stead. The objects of the

petition were to obtain an adjudication that such recommendation and order were void, and to enjoin the defendant State School Commissioner from issuing commissions to those named as the plaintiffs' successors. As to those who had been thus "appointed," it was prayed only that they be made parties defendant and show cause why the recommendation of the grand jury should not be declared inoperative and ineffective and the order of the judge vacated. It was held that the plaintiffs were not entitled to the equitable relief sought. Even though the plaintiffs were apparently considered as incumbents,—there being nothing to show actual interference by any defendant, the facts were materially different from those of the case at bar, as an alleged basis for injunction. The petition contained nothing to show either that the school commissioner was guilty of capricious or arbitrary conduct or that the mere issuing of the commissions would in any way hinder or obstruct the plaintiffs in the performance of their official duties. It was stated in that decision that the "officers sought to be removed" could not enjoin the persons named as their successors "from assuming to exercise the duties of the office to which they were appointed," and that the plaintiffs, being "rightly in office, would be under no obligation of surrendering to those presenting the new commissions; and, by simply declining to do so, could compel the latter to institute proper proceedings to test their legal right to the office." But the court did not purport to say what would be the plaintiffs' remedy if defendants should have refused to institute "proper proceedings" and in lieu thereof had attempted by personal means to seize the reins of office as by entering the place where the plaintiffs were conducting their official business and by then assuming to transact such business, to the hindrance and confusion of the plaintiffs as incumbents. The petition in that case was a bare effort to try the title to public offices, and when the decision is considered in the light of the facts there involved, it does not support the view that injunction is not a proper remedy in the case at bar. In *Tupper* v. *Dart,* 104 *Ga.* 179 (30 S. E. 624), the plaintiffs, after an election in which they appeared to be the successful candidates for municipal offices, and after they were installed, brought a suit for the "writ of prohibition or the writ of injunction" to prevent the hearing of a contest filed by their opponents. The trial court refused to grant either writ, and the judg-

ment was affirmed by this court. No interference was alleged. That case does not resemble the case at bar. The case of *Moore* v. *Dugas,* 166 *Ga.* 493 (143 S. E. 591), is of the same type as the *Tupper* case. In *McCarthy* v. *McKinney,* 137 *Ga.* 292 (73 S. E. 394), the plaintiff was out of office, and, claiming that the election of her successor was illegal, sought to enjoin the latter, the incumbent, from holding the office and receiving the salary attached thereto. It was held that quo warranto and not injunction was the remedy. Here the plaintiff alleges in effect that he is in office and that the defendants are interfering with him in such possession and in the performance of his duties, presenting an entirely different situation from that involved in the *McCarthy* case, to which the case of *Hussey* v. *Gallagher,* 61 *Ga.* 86, is similar. In *Stanford* v. *Lynch,* 147 *Ga.* 518 (94 S. E. 1001), Lynch and others as citizens and taxpayers sought injunction to restrain Stanford and Blanton from serving or attempting to serve as members of the board of education. The *defendants were in office,* and the real purpose of the suit was to test the right of these defendants to continue in office. The court in its decision declared the office of Stanford vacant. This court reversed the judgment, holding that "quo warranto affords an adequate remedy for the trial of title to a public office; and where title is the sole issue, all equitable jurisdiction is ousted." A suit against one in office to prevent him from exercising the duties thereof is widely different from a suit by one in office to prevent others from interfering with the proper discharge of his duties as the incumbent. In *Davis* v. *Matthews,* 169 *Ga.* 321 (150 S. E. 158), it was alleged that the defendant mayor had without authority of law discharged the legally appointed chief of police and appointed another, the codefendant, to fill the office, and that such appointee was undertaking to exercise "such authority." It was contended that under the charter the mayor and aldermen should elect the chief of police or marshal. The suit was brought only by members of the board of aldermen. The discharged police officer did not complain. So far as the new appointee was concerned the petition was construed as a suit by injunction to try the title of one in office, and it was held that quo warranto was the remedy. Stripped of other allegations, which were said to be merely incidental, the suit was practically identical with that in *Stanford* v. *Lynch,* supra, and thus differs on its facts from the

case at bar. If the discharged police officer himself had brought suit, and had sought, not to try the title to the office, but to restrain the mayor and the new appointee from interfering with him in the discharge of his official duties, the result might have been different. Cf. Arnold *v.* Hilts, supra. It was not an actual interference with the aldermen in the performance of their duties for the mayor in his capacity as such to attempt to do that with respect to the appointment of a police officer which he had no power to do. If he had undertaken to transfer the duties of one of the aldermen to some other person who attempted to function to the exclusion of such alderman, and the alderman had sought to enjoin the mayor and the intruder brought in by him, the case would have had the complexion of the case at bar; but an entirely different case was presented by the record.

The one decision alluded to above as being contrary to what is now held will be found in the recent case of *Martin* v. *Rowland,* 177 *Ga.* 363 (170 S. E. 235) ; but that decision, being in conflict with the earlier full-bench decision in the case of *Talmadge* v. *Sutton,* supra, can not be followed as authority, in view of the rule that, in the event of such conflict, the older decision is controlling. As to this rule, see Civil Code, § 6207; *Calhoun* v. *Cawley,* 104 *Ga.* 335 (30 S. E. 773). The case of *Talmadge* v. *Sutton* was by inadvertence overlooked in deciding the *Martin* case. The decision in the *Martin* case, in holding that quo warranto would be the proper remedy of Martin, the incumbent, appears also to be inconsistent with the decision in the early case of *Bonner* v. *Pitts,* 7 *Ga.* 473 (2), where it was held, all the Judges concurring, that quo warranto is the remedy of *one out of office* who seeks admission thereto as against the incumbent. The decision in the *Martin* case was expressly based upon *Coleman* v. *Glenn,* supra, and *Sweat* v. *Barnhill,* 170 *Ga.* 545 (153 S. E. 364). But in each of these cases the facts were materially different from those involved in the *Martin* case. We have already explained the *Coleman* case and further reference to that case is unnecessary. In *Sweat* v. *Barnhill,* it appears that Sweat, the plaintiff, was an incumbent, as a member of the board of commissioners, while the defendants, Barnhill and Langdale, were out of office, but claiming the right to act as commissioners; and it was held by this court that the *defendants* were not entitled on their *cross-petition* to an

injunction against Sweat to restrain him, the incumbent, from withholding the books, papers, and equipment belonging to the office of the board of commissioners. The *Sweat* case is in complete harmony with the views which we now express, and did not support the ruling made in the *Martin* case. In view of what has been said, the decision in the *Martin* case could not properly be followed as authority. in the case at bar. The error made by this court in that decision is much regretted; but it is no less the duty of this court to notice and correct or avoid its own errors than to correct those of inferior tribunals.

Moreover, while it is deemed advisable to point out the fallacy of the decision in the *Martin* case, at this the first opportunity, without permitting it to stand as a possible cause of confusion to the courts and the legal profession, we could, if necessary, distinguish that case from the case at bar upon perfectly safe ground, namely: In that case Martin, the plaintiff, was contesting the right of the defendant Rowland to be admitted to office after his e'ection as Martin's successor, and the petition showed that Rowland was actually claiming the office. In the present case, it does not appear that any one of the defendants or any person other than plaintiff is claiming the office of State Veterinarian. The petition on this point alleges merely that the defendant commissioner "employed and designated" the defendant White as "Chief Veterinary Adviser or some other unauthorized title," and under this "supposed" authority White is attempting to take over and perform the duties delegated by statute to petitioner as State Veterinarian. There is no such office under the law of this State as "Chief Veterinary Adviser," and the allegation that the defendant White is assuming to act under this or "some other unauthorized title" does not show that he is claiming the office of "State Veterinarian" as created by statute. In *Benson* v. *Hines,* 166 *Ga.* 781 (144 S. E. 287), it was held that quo warranto will not lie to try title to an office not shown to have a legal existence. Hence, the petition here, differing from that in the *Martin* case, fails to show that there is any person against whom the plaintiff could maintain a suit for the writ of quo warranto, which must be brought against one who claims the office. But even so far as the *Martin* case went awry on principle, the decision was not the handiwork merely of the learned Justice whose name it bears, but it was the product of the court as a

whole, and the present writer accepts his own full share of the responsibility,—stating further, however, that the criticism now lodged against that decision would have been as readily and as pointedly made, if he himself had prepared the opinion.

One additional remark regarding the decision in the *Martin* case: It does not appear that such decision in any way affected the treatment or consideration of the present case in the court below either by the trial judge or by counsel. It was not cited or referred to in any brief filed herein, and was only called to mind by this court in its independent consideration of the case at bar. In the circumstances, it would seem to be a fair assumption that the decision was not cited or relied on in the trial court, and also that the error made therein has not confused or misled any one or resulted in harm, so far as the present case is concerned. The failure of counsel to make reference to that decision is evidently due to the fact that it was so recent as not to have been drawn to their attention before the filing of the briefs in the present case.

But to return to the question now for decision: even assuming that the petition shows that one of the defendants is claiming the office, the substance of the petition is that, in an effort to destroy the plaintiff as a public officer and to force him to abandon the office, the defendants Adams and White are interfering with the plaintiff's peaceable possession of the same by personal intrusion and attempted usurpation. This does not show that the plaintiff is seeking now to have the title to the office adjudicated, and certainly not that he should be refused the aid of a court of equity upon the theory that he himself should vacate the office and then apply for the writ of quo warranto to obtain a reinstatement. An officer *in possession,* whether de facto or de jure, could not himself maintain such an action, because the writ is essentially one to inquire into the right of a person to public office "the duties of which he is in fact discharging." Civil Code (1910), § 5451; *Holmes* v. *Sikes,* 113 *Ga.* 580 (2) (38 S. E. 978). As was said by the Supreme Court of Louisiana in Guillotte *v.* Poincy, supra, the same being a case of rival claimants, "The proper plaintiff" in such an action "is the party claiming the office as entitled de jure, and the necessary defendant is the officer de facto who holds and possesses it." From what has been said, it should be clear that decisions to the effect that equity will not concern itself with a mere

political right are not in point; also that the constitutional provision as to the separateness of the legislative, judicial, and executive powers (Civil Code of 1910, § 6379) is no barrier against the exercise of equity jurisdiction under the facts of this record. If this provision of the constitution would bar a court of equity, why would it not also prevent judicial action in cases of mandamus or quo warranto, remedies which the defendants contend the present plaintiff should have adopted?

Now, to view the case from a slightly different angle, the writ of *mandamus* might have been the plaintiff's remedy against commissioner Adams if the latter had merely refused to recognize the plaintiff as State Veterinarian (*Holder* v. *Anderson,* 160 *Ga.* 433, 128 S. E. 181) ; but the allegations went further and charged positive interference as to which the plaintiff was remediless without injunctive relief. The petition alleged a virtual conspiracy between the commissioner and White, and it has been held that injunction may be granted to prevent illegal practices by a public official. *Atlanta Title & Trust Co.* v. *Tidwell,* supra. Moreover, mandamus would not lie as a remedy against White, who does not appear from the petition to be a public official, and the petition complains of unauthorized interference by both Adams and White. Thus, as to these defendants, remedies other than injunction would of necessity be dissimilar. Equity may grant injunction to prevent a multiplicity of suits. Civil Code (1910), § 5469 (2) ; *Burns* v. *Hale,* 162 *Ga.* 336 (133 S. E. 857) ; *Glover* v. *Rome,* 173 *Ga.* 239, 240 (160 S. E. 249). Counsel for defendants rely strongly upon the case In re Sawyer, 124 U. S. 200 (8 Sup. Ct. 482, 31 L. ed. 402), where (two Justices dissenting) it was said that "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property." The facts under consideration in that case did not include actual interference with an incumbent, while the present case is one of alleged actual interference by overt acts, both by the commissioner and by his codefendant White. There is a vast difference between the mere passage or threatened passage of an order purporting by its *language or paper terms* to sever one's legal relation as a public officer (see *Coleman* v. *Glenn,* and In re Sawyer, supra), and *positive acts* which directly impede and obstruct either a de facto or de jure officer in performing the duties of the office

held by him. With regard to the rights with which equity may concern itself, it would seem from the provisions of the Code as quoted above, and especially section 5490, that equity jurisdiction at it may have existed at common law has been so enlarged by statute in Georgia that it is not limited to the protection of rights of property. See, whether pro or con, *DeVaughn* v. *Minor, 77 Ga.* 809 (2) (1 S. E. 433); *Plumb* v. *Christie,* 103 *Ga.* 686, 692 (30 S. E. 759, 42 L. R. A. 181); *Lofton* v. *Collins,* 117 *Ga.* 434 (2) (43 S. E. 708, 61 L. R. A. 150); *Hussey* v. *Gallagher,* 61 *Ga.* 86; *Stark* v. *Hamilton,* 149 *Ga.* 227 (99 S. E. 861, 5 A. L. R. 1041); *McFarlan* v. *Manget,* 179 *Ga.* 17 (2) (174 S. E. 712), and cit.

But even if such right is requisite to equity jurisdiction, this element was not lacking in the present case. The office of State Veterinarian is one with a salary attached, even if no provision has been made for its payment. While an officer has no *vested* right in the office held by him, and thus can not complain of an abolishment of such office, or of his removal or suspension, according to law (*Felton* v. *Huiel,* 178 *Ga.* 311 (4), 173 S. E. 660; *Gray* v. *McLendon,* 134 *Ga.* 224 (7), 67 S. E. 859, and cit.), it does not follow that he has absolutely no financial or property interest which may be protected by a court of equity as against one who otherwise and by private means seeks to interfere with his possession and conduct of such office during his incumbency therein. Ekern *v.* McGovern, supra; Stiles *v.* Lowell, 233 Mass. 174 (123 N. E. 615, 4 A. L. R. 1365); 10 R. C. L. 339; 22 R. C. L. 378, § 10; 21 C. J. 154; 46 C. J. 932, § 28. As illustrating such interest, see *Mattox* v. *Board,* 148 *Ga.* 577 (97 S. E. 532, 5 A. L. R. 568); *Tucker* v. *Shoemaker,* 149 *Ga.* 250 (99 S. E. 865); *City of Macon* v. *Bunch,* 156 *Ga.* 27 (118 S. E. 769). In the Massachusetts case of Stiles *v.* Lowell, supra, it was said by Chief Justice Rugg, that "The incumbent of an office carrying emolument has rights protected from assault by third persons, although as against the State itself his relation may be of a different nature." It is not insisted in the case at bar that the commissioner had any authority whatever to remove the plaintiff as State Veterinarian. See, in this connection, *Holder* v. *Anderson,* supra.

We conclude that the petition was not subject to ground 5 of the demurrer for the reason, as contended, that quo warranto and not injunction was the plaintiff's remedy. Nor would mandamus be

an adequate remedy. We hold further that the petition stated a cause of action for injunction, and was not subject to dismissal as a whole, under the rule stated in *Crittenden* v. *Southern Home B. & L. Asso.*, supra.

In what is said above, we do not overlook section 113 of the reorganization act (Ga. L. 1931, p. 45), invoked by the defendants, as follows: "In event, after the effective date hereof, and in course of the administration of this act, any conflict shall arise between the respective offices, departments, boards, and commissions herein affected, the Governor is hereby requested to report same to the next General Assembly, and in the interim, as executive of this State, he is empowered to give such direction to the matters in conflict as will best subserve the interests of this State." It is contended by the defendants that the plaintiff should have appealed to the Governor for direction under this section. It will be seen that section 113 of the reorganization act refers only to such conflicts as might arise "in course of the administration of this act" between the respective "offices, departments, boards, and commissions" affected by the act. This act did not change the relation of the office of State veterinarian to the office of commissioner of agriculture or to the department of agriculture. *Talmadge* v. *Sutton*, supra; Ga. L. 1931, p. 40. It follows that this was not a conflict between offices "affected" by the act in its purpose "to simplify the operations of the Executive branch of the State Government." See caption, Ga. L. 1931, p. 1. Furthermore, the controversy had no reference to anything contained in the reorganization act; and hence it was not a conflict arising "in course of the administration of this act." Without further construction of section 113, it is plain that the dispute reflected by the instant petition was not one falling within the provision of that section, and the plaintiff would have had no right to appeal to the Governor thereunder.

■ Having concluded that the petition was not subject to dismissal as a whole, as contended in grounds 4 and 5 of the demurrer, and was not otherwise fatally defective as failing to set forth a cause of action, we pass to a consideration of ground 23, which was one of the grounds sustained by the trial judge. As indicated above, this ground of demurrer attacked a single paragraph relating to plaintiff's alleged right to salary. As to that matter, it is true that mandamus was the proper, if not the exclusive, remedy. Ac-

cordingly, this ground of the demurrer was properly sustained. But the sustaining of the demurrer to this particular paragraph and the striking of the allegations therein contained would not have detracted in the slightest degree from the plaintiff's right to injunction so far as the physical interference with his incumbency in the office was concerned. The allegation referred to was irrelevant to that question, and the petition would have stated a cause of action as well without it as with it. This ground of the demurrer was correctly sustained, but such ruling could not properly result in a judgment of dismissal. In *While* v. *Little,* 139 *Ga.* 522 (3) (77 S. E. 646), it was held: "If a special demurrer is urged to a petition, or other pleading, already of file, attacking only certain parts of it, and is sustained, the result is to eliminate the parts so held bad." See also *Blackwell* v. *Ramsey-Brisben Stone Co.,* 126 *Ga.* 812 (55 S. E. 968); *Canuet* v. *Seaboard Railway Co.,* 128 *Ga.* 41 (57 S. E. 92); *Wilson* v. *Central of Georgia Railway Co.,* 132 *Ga.* 215 (3) (63 S. E. 1121); *Willingham* v. *Glover,* 28 *Ga. App.* 394 (111 S. E. 206); *Smith* v. *Bugg,* 35 *Ga. App.* 317, 319 (133 S. E. 49). In *Avery* v. *Bower,* 170 *Ga.* 202 (152 S. E. 239), it was held that the petition should not have been dismissed for amendable defects, but "petitioner should have been allowed to amend." The court may require a plaintiff, on pain of dismissal, to eliminate an irrelevant allegation by amendment, but should not dismiss the petition as a whole without first requiring such amendment. Cf. *Keen* v. *Nations,* 43 *Ga. App.* 321 (158 S. E. 613). In *McSwain* v. *Edge,* 6 *Ga. App.* 9 (2) (64 S. E. 116), the Court of Appeals held as follows: "Where demurrers, both general and special, are filed to a petition, and the trial judge at one and the same time sustains all of the demurrers and dismisses the action, and it appears that the petition is not subject to the general demurrer, the judgment will be reversed. A peremptory judgment of dismissal is not the proper disposition of the case upon the sustaining of a special demurrer." In the opinion by Judge Powell it was said: "The proper judgment on a special demurrer, going only to the meagerness of the allegations, is not a peremptory judgment of dismissal of the action, but a judgment requiring the plaintiff to amend and to make his petition more certain in the particulars wherein he has been delinquent; and then if he refuses to amend, the petition may be dismissed, if the delinquency relates to the entire cause of action.

However, if the special demurrer goes only to some particular part of the petition, without which a valid cause of action would still be set forth, the result of finally sustaining the special demurrer would be, not to dismiss the action, but to strike the defective portion. This is also the proper course where the special demurrer attacks some particular portion of the pleading for irrelevancy or impertinence." See also *News Publishing Co.* v. *Lowe,* 8 *Ga. App.* 333 (69 S. E. 128) ; *Ferrell* v. *Greenway,* 157 *Ga.* 535 .(2) (122 S. E. 198), and cit.

The petition stated a cause of action and ought not to have been dismissed in its entirety upon any ground of the demurrer which the court sustained.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Worrill, J., who dissent.*

### ON MOTION FOR REHEARING.

In response to the motion for rehearing the decision as originally filed has been revised.

*Rehearing denied. All the Justices concur, except Beck, P. J., and Worrill, J., who dissent.*

BECK,· Presiding Justice, and WORRILL, Judge, dissenting.

■ We concur in the ruling of the majority that the writ of mandamus, and not injunction, would have been the proper remedy to enforce the plaintiff's alleged right as a public official to have his name and salary placed upon the budget.

■ But we are of the opinion that under the facts alleged the petitioner showed that he had been ousted from the office to which he claims title. The mere fact that in his allegation he does not use the expression "had been ousted," or had been deprived of the office, does not matter, inasmuch as the allegations show that another was exercising all of the functions that petitioner was entitled to exercise, was giving direction to the subordinates in his office, and that petitioner's salary had been cut off. Under these circumstances petitioner was virtually out of office and had the right to bring quo warranto to try the title to the office, and was therefore not entitled to the writ of injunction. *Martin* v. *Rowland,* 177 *Ga.* 363 (170 S. E. 235), and cit. Independently of the case specifically mentioned, under the section of the Code relating to the writ of quo warranto, the common-law remedy was the remedy of the plaintiff and not an equitable petition. Wherefore we dissent from

the opinion of the majority in so far as it results in a reversal of the judgment of the court below.