her mother was standing between Woodruff and defendant to the right of him. He and the mother were standing between defendant and Minnie. Defendant was standing nearest to her door, her mother next, then Woodruff and Minnie. Defendant, when she came in, had her hands either down by her side or under her apron, as far as Woodruff knew. He never saw her raise her hands up before the pistol fired. She never pointed it at Minnie; never said anything about shooting Minnie. When it fired she caught right around Woodruff and said she was sorry and did not aim to do it; she then walked around the door and passed out, and seemed to be very sorry. A minute afterwards Woodruff saw her away up the street running. When her mother came in she said something to defendant about her loaning the pistol to her to carry home that evening. When it fired Woodruff was about putting his hand on defendant to make her go back again. The defendant was arrested in a drug-store, and told the person who made the arrest that she went in there to get some cordial. She further told him that she had killed her sister with a big yellow chair, that her sister was coming at her with a butcher-knife, and that she picked up a chair and knocked her down with it.

L. CLEVELAND and J. A. DREWRY, for plaintiff in error.

W. A. LITTLE, attorney-general, and J. H. TURNER, solicitor-general, by HARRISON & PEEPLES, *contra.*

---

GOSTIN *v.* BROOKS.

In the act of September 26th, 1883, touching the town of Reynolds, the phrase "the mayor and aldermen" is generally used as synonymous with the corporate name and style "mayor and council of the town of Reynolds." It is so used in the 15th section, which declares, that "the mayor and aldermen of said town shall . . elect by ballot a marshal." It follows, under the 9th section of the act, that the mayor cannot vote in an election for marshal,

unless there is a tie, the language of the 9th section, so far as applicable, being in these words: "At all meetings of mayor and aldermen the mayor shall preside, if present; if not, any one of said aldermen that may be selected for that purpose; and the mayor and three aldermen, or the mayor *pro tem.* and three aldermen, shall constitute a quorum for the transaction of any business; and the mayor and the mayor *pro tem.* shall in no event vote while presiding, unless there is a tie; then he shall have the casting vote. A majority of the votes shall determine all questions and elections."			*Judgment reversed.*

April 28, 1892. By two Justices.

Municipal corporations. Officers. Before Judge MARTIN. Taylor county. At chambers, February 24, 1892.

Upon the application of Gostin for the writ of *quo warranto* against Brooks, the judge of the superior court refused to grant a rule *nisi*, and Gostin excepted. His petition alleged as follows: In February, 1892, an election was held by the mayor and aldermen of the town of Reynolds for the office of marshal, being one of emolument and trust and necessary for the powers of government delegated to that town by the legislature; Gostin at said election was a candidate for that office and received three votes, which was a majority of the board of aldermen of the town and of the legal votes cast at the election, there being but five members of the board of aldermen; Brooks was his opponent and received the votes of but two of the board of aldermen, and was thereby defeated; one illegal vote was cast, to wit that of the mayor, who voted with two aldermen for Brooks, "thereby making a tie, and said mayor then and there declared that there was no election." By the charter of the town the mayor can vote in no event unless there is a tie, "and as there was no tie and petitioner received a majority of the board of aldermen, that said mayor had no right to vote, that his vote should not have been received or counted, and that petitioner should have been declared duly elected." Brooks was elected marshal of the town for the year 1891, and

discharged the duties of his office, though he has never given the bond and taken the oath required by law. Petitioner shows that though he has been duly and legally elected marshal of the town and has given bond and taken the oath required by law, still Brooks, pretending that there has been no election and claiming that he has a right to hold over until his successor is elected, continues to exercise the functions of the office and to receive its emoluments and refuses to surrender it to petitioner.

R. D. SMITH and W. E. STEED, for plaintiff.

W. S. WALLACE, by brief, for defendant.

---

### BEUTELL *v.* OLIVER, administratrix, *et al.*

1. Service of an amendment to a declaration, whether made by a proper officer or evidenced by acknowledgment and waiver signed by counsel for defendant, is no substitute for service of the declaration itself and of the process annexed thereto.
2. After a sheriff or deputy-sheriff has gone out of office, he cannot, without some order of the court giving direction in the matter, amend an incomplete or defective return of service made by him while in office.
3. There being on the declaration and process an incomplete return of service, the return was amendable; but no motion to amend being made, and the case being before the court for final trial, it was not error to reject a traverse of the return tendered by the plaintiff, nor to refuse a continuance in order to perfect service, nor to dismiss the action for want of service. These matters are subject to the discretion of the court, there being a want of due diligence on the part of the plaintiff in procuring service or in obtaining a proper return thereof. His remedy for an incomplete return was not by traverse, but by application to have the return amended, which, if made and supported by sufficient evidence, would have been granted as matter of right. *Judgment affirmed.*
   April 28, 1892. By two Justices.

Service. Practice. Amendment. Traverse. Continuance. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1891.