1. In a suit by two of four members of a board of county commissioners, suing both as officials and as citizens, and by other persons as citizens only, against another who claimed to have been elected to fill a vacancy caused by the death of a fifth member of the board, where it was shown by the allegations that neither the defendant nor any one else had been so elected to fill such vacancy, but that despite this fact the defendant *Page 337 
would, unless restrained, present himself as a member of the board and would attempt to act and serve as such member and would thereby interfere with the lawful members in the performance of their official duties, the petition stated a cause of action for injunctive relief as against the contention that a suit for the writ of quo warranto instituted against such defendant would have been the proper and exclusive remedy under the facts alleged. Whether the petition may have been duplicitous and subject to special demurrer, no such demurrer was filed.
2. Where the statute in reference to such board of commissioners provided that the members of the board on organization should elect one of their number as chairman, to preside and act as such during the remainder of his term, and that any vacancy on the board should "be filled by appointment by the remaining members," in a proposed election to fill such a vacancy it was competent for a member who had been so chosen as chairman to vote as one of the "remaining members;" and where two members voted for a named person, and the chairman and another member voted against him, there was no election, and the person as to whom such votes were cast would have no right or authority to act as a commissioner on the theory that he had been appointed or elected to fill such vacancy.
3. While the facts that such person had received a commission from the Governor, and had taken oath as a member to fill such vacancy, would constitute prima facie evidence in favor of his claim to such office, they were not conclusive, and it could be shown that there had been no election, because of the tie vote referred to in the preceding note.
4. The court did not err in overruling the demurrer for any reason urged: and there being evidence to support all of the material allegations of the petition, it was not error to grant an interlocutory injunction.
 No. 14176. JULY 16, 1942.
L. R. Robinson and R. R. Johnson, individually as citizens of Seminole County, and as members of the board of commissioners of roads and revenues of that county, together with eight other persons suing only as citizens, filed a petition in equity against H. O. Cummings, also a resident of Seminole County, alleging in substance the following:
(2) By the act of August 16, 1920 (Ga. L. 1920, pp. 610-614), the County of Seminole was laid off into five commissioners' districts. Petitioners Robinson and Johnson are the commissioners from Donalsonville and Spring Creek Districts, respectively. E. J. Greene and D. H. Miller are the commissioners from Iron City and Race Pond Districts. Fred Childree was the commissioner from the Steam Mill District until February 22, 1942. Childree died on that day, leaving a vacancy as to the Steam Mill District. *Page 338 
(3) Under the act of 1920, supra, as amended by an act passed in 1933 (Ga. L. 1933, pp. 656-658), when any vacancy on the board occurs by death, resignation, or disqualification, the same shall be filled "by appointment by the remaining members of the board; such appointee shall qualify and hold office for the remainder of the time of the one whom he shall succeed."
(4) At the regular March term, 1942, of the board of commissioners, held on the first Tuesday in that month, Commissioner Miller nominated the defendant H. O. Cummings to fill the vacancy caused by the death of Commissioner Childree, and this nomination was duly seconded by Commissioner Greene. On this motion Commissioners Miller and Greene voted in the affirmative, that is, that Cummings be elected to fill such vacancy, and Commissioners Robinson and Johnson voted in the negative, that is, against the election of Cummings.
(5) Petitioners allege on information and belief that Cummings applied to his Excellency Eugene Talmadge, Governor of the State of Georgia, for commission as a member of the said board of roads and revenues, and such commission was issued, and thereafter the defendant Cummings went before the ordinary of Seminole County and took the oath prescribed by law; "or it may be, petitioners not being certain, that he first took the oath and then applied for the commission, but either one or the other, according to petitioners' information and belief."
(6) The regular meeting held on the first Tuesday in March was duly adjourned over to convene at four o'clock p. m. Saturday, March 7.
(7) Petitioners are informed and verily believe that at said adjourned meeting and at all meetings of said board of commissioners hereafter called or held, the said H. O. Cummings will attempt to act, take part in and serve as a commissioner of roads and revenues of said county; that in his effort to do so he will annoy, interrupt, and prevent the orderly proceedings of said board, and that unless this court intervenes he will seek to vote on all questions arising at said board meetings with respect to county affairs, and will therefore create confusion, uncertainty, and probably illegality in the proceedings of said board. Petitioners have no right or power or desire to either eject or have said Cummings removed from the room in which said board meets and carries out its proceedings, *Page 339 
nor have they any power to remove him from said room or prevent him from voting on matters coming before said board or making motions or otherwise taking part in the proceedings of said board. Petitioners show that the acts and conduct of said board of commissioners are important in that they have the fiscal affairs of said county in charge, and it is necessary for them to raise revenues for carrying on the public work of said county and to provide revenues for the necessary county expenditures, and to otherwise discharge the affairs of the county. That to have some one engaged in said proceedings who is unauthorized to be there would lend confusion, uncertainty, and probable illegality to said board's proceedings.
(8) Petitioners further show that as members of said board, duly elected and qualified, and as residents and citizens of said county, they have an interest in the orderly and legal conduct of said board, and that they have a right to complain against any one who is preventing or interfering with said orderly or legal proceedings of said board; and to prevent any interference by the defendant this petition is brought.
The prayers of the petition were as follows: that the court pass an order or rule requiring the defendant H. O. Cummings to show cause why he should not be enjoined from going into, seeking to take part in, attempting to vote in, or otherwise seeking to exercise the functions of a county commissioner, and in the meantime and until further order of the court that Cummings be so restrained; that Cummings be restrained and enjoined from going into, seeking to take part in, attempting to vote or otherwise seeking to exercise the functions of a county commissioner; and for general relief.
The petition was positively verified by one of the plaintiffs. It was presented to the judge on March 7, who granted a restraining order and fixed a date for interlocutory hearing. On that date the defendant filed a demurrer. The demurrer was overruled, and after hearing evidence the judge granted an interlocutory injunction, and Cummings excepted.
The grounds of the demurrer were as follows: (1) The petition fails to set out a cause of action requiring the grant of equitable relief; (2) the petition is without equity; (3) the plaintiffs have a complete and adequate remedy at law. *Page 340 
The answer was in substance as follows: Paragraphs 3 and 6 of the petition were admitted. Paragraph 8 was "denied as pleaded," and paragraph 9 was denied. Paragraphs 2, 4, 5, and 7 were "denied as pleaded," and as to these paragraphs, respectively, it was averred: (2) The commissioners elected from their number L. R. Robinson as chairman, who under the terms of the act creating said board is required to preside and act as such chairman during the remainder of his term of office. (4) According to defendant's information and belief, he received a majority of the votes of "the remaining members of the board; that Messrs. Miller and Greene voted for him and that probably Commissioner Johnson failed to vote, and that the chairman of said board had no vote. (5) Defendant shows that the members of the board voting for him reported the facts to his Excellency, Eugene Talmadge, Governor of the State of Georgia, and that the Governor decided on the facts that this defendant had received the vote of a majority of the remaining members of the board and as such was entitled to a commission which the Governor was in duty bound to issue under the act creating said board; prior to the issuance of the commission the defendant took the oath required by the act and filed the same with the ordinary of Seminole County for record; defendant holds the Governor's commission as a member of said board which said commission will be exhibited to the court upon the hearing. (7) Defendant shows that he is the duly elected and commissioned member of the board of commissioners of roads and revenues of Seminole County, and as such proposes to attend all legal meetings of said board, to conduct himself therein in a reasonable, quiet, and dignified and proper manner, seeking to perform in a conscientious manner the duties of a commissioner. Defendant is qualified both in law and in fact to hold said office, he is the choice of a majority of the members of said board and of a majority of the voters in the Steam Mill Commissioners District; the Governor of the State has decided that he is entitled to the office, and has issued his commission accordingly, and no act of this defendant or of the board would lend confusion, uncertainty, or illegality to the board's proceedings.
For further plea and answer, defendant shows: As hereinabove pleaded, defendant is qualified to hold the office to which he has been elected; he has been a resident of the county for many years; *Page 341 
he holds large property interests in the county; a majority of the members of the board have elected him to the office; the Governor of the State has exercised his constitutional and legal function of deciding that election, and has duly commissioned defendant as required by law; "while no other provision of law is made for filling the vacancy, a majority of the qualified voters in the district who elected defendant's predecessor in office having signed petitions requesting the court to recognize and, if legally consistent, confirm him in the office to which he has been legally elected; that if the court should hold that the act creating the board makes no provision, or makes a provision which is unavailing, to fill the vacancy, then the judge of this court would be authorized under the law to appoint a successor to fill the unexpired term. "Wherefore defendant prays that he be in all things confirmed in the office to which he has been elected; and that if the court should hold that no adequate provision has been made for filling the vacancy, that the judge of this court appoint this defendant upon the petition hereinbefore referred to." To this answer the defendant attached an affidavit "that the allegations of the above and foregoing answer are true, to the best of his knowledge, information and belief."
At the hearing, the plaintiffs introduced their verified petition and a certified copy of the minutes of the meeting of the board of commissioners held on Tuesday, March 3, 1942, as follows: "The Board of Commissioners of Roads and Revenues of Seminole County, Georgia, met in regular session on Tuesday, March 3, 1942, with Commissioners Miller, Greene, Johnson, and Robinson present and Chairman Robinson presiding. Minutes of the previous meeting read and approved. The matter of appointing commissioner for Steam Mill District to fill the unexpired term of Commissioner Childree, deceased, was brought up, and after some discussion a motion was made by Commissioner Miller and seconded by Commissioner Greene that the board appoint Henry O. Cummings to fill the unexpired term. When this motion was put to a vote by the chairman, Commissioners Miller and Greene voted for Cummings' appointment and Commissioners Robinson and Johnson voted against the appointment of H. O. Cummings. After the question of the legality of this appointment was raised, the matter was referred to county attorney, who asked for time to look *Page 342 
up the law on same; and the matter was tabled until Saturday, March 7, 1942, at which time the board would assemble at call meeting at 4 p. m. to hear decision of county attorney on the question. There being no further business, the board adjourned until 4 p. m. March 7, 1942."
D. H. Miller, sworn for the defendant, testified: "I have been a member of the board of commissioners of roads and revenues of Seminole County for some years past, and I am now serving my eighth year. It has never been the custom in said board for the chairman to vote except in case of a tie. At the meeting of March 3, 1942, Mr. L. R. Robinson, chairman, presided, and Messrs. R. L. Johnson, E. J. Greene and myself, who were all members of the board, were present. There was some discussion of filling the vacancy created by the death of Mr. Childree. I asked Mr. Johnson to suggest somebody. He said he had nobody to suggest. I said, `I am going to nominate Mr. Henry O. Cummings.' Mr. Greene seconded the nomination. Mr. Robinson, the chairman, said he was against the motion, and opposed Mr. Cummings acting as commissioner. He asked Mr. Johnson if he was going to vote with Mr. Greene and me. Mr. Johnson said no, he was not going to vote for Mr. Cummings. Mr. Robinson, the chairman, said he would declare no election. I stated that I would contend that Mr. Henry O. Cummings was elected. Mr. Robinson called on the county attorney for an opinion, and we were to meet back Saturday to get the opinion; but in the meantime the matter got in court in this proceeding. I reported the facts to the Governor, and he issued a commission to Mr. Cummings. I reported the election to the Governor by telegram. I do not have a copy of the telegram. I just stated what had happened. I am a member of the board, as are Messrs. Greene, Johnson and Robinson. There were four members present. Two members, Mr. Greene and I, voted for Mr. Cummings. Two members, Mr. Johnson and Mr. Robinson, voted against Mr. Cummings."
E. J. Greene testified substantially to the same effect as Miller.
The defendant, Cummings, testified in his own behalf: "I did not seek the appointment as commissioner of the Steam Mill District to fill the vacancy caused by the death of Mr. Childree. It had been mentioned to me prior to the meeting on March 3, 1942, but on that date I was in Moultrie, Georgia, attending a stock sale. *Page 343 
My first information came to me through my brother, Jack Cummings, at Moultrie. He told me what had transpired and in talking to Governor Talmadge on the telephone about another matter told him what had happened. Later I talked to Carlton Mobley on the telephone and told him about the meeting. He said he would take it up with the Governor and he thought the Governor would issue me a commission but asked that I have the two commissioners who voted for me send the Governor a telegram. Mr. Greene was in Florida at the time and I prepared and had Mr. Miller sign the telegram advising the Governor of what had happened. I first took the oath of office and filed it with the ordinary as required by the act, before the Governor issued me the commission. I have lived in the Steam Mill District of Seminole County all my life; I have a great deal of property in the county and I am otherwise qualified to occupy the position of commissioner of roads and revenues."
The defendant introduced a certified copy of an executive order as follows: "Whereas, at a meeting of the Board of Commissioners of Roads and Revenues of Seminole County on March 3, 1942, a majority of the commissioners voting appointed Honorable Henry O. Cummings as commissioner to fill the unexpired term of Fred Childree, deceased, who was commissioner from the Steam Mill District of Seminole County, Georgia; and whereas the act of 1933, page 656, provides that in the case of a vacancy on said board of commissioners of roads and revenues that the other commissioners appoint a successor to serve the unexpired term of the member whose term has been vacated by death, resignation or otherwise: It is therefore ordered that Honorable Henry O. Cummings be commissioned as member of the board of commissioners of roads and revenues of Seminole County, Georgia, to fill the unexpired term of Honorable Fred Childree, deceased, said term expiring on December 31, 1944." This order was dated March 5, 1942, and signed by the Governor. The defendant introduced also a commission under seal of the Executive Department of the State of Georgia, signed by the Governor under date of March 5, 1942, issued to Honorable Henry O. Cummings and commissioning him as "a member of the Board of County Commissioners of the County of Seminole."
L. R. Robinson, for the plaintiffs, testified: "I have been a member *Page 344 
of the Board of Commissioners of Roads and Revenues of Seminole County since the creation of the county in 1921; for all but four years of that time I have served as chairman. The chairman always voted on every motion. At the meeting of March 3, 1942, the question of filling the vacancy created by the death of Mr. Childree from the Steam Mill District came up. The county attorney read us the law authorizing the remaining members of the board to appoint a successor. I suggested Mr. Will Parker and Mr. Childree's brother. Mr. Miller nominated Mr. Cummings. I stated my objections to Mr. Cummings, and put the vote. Mr. Miller and Mr. Greene voted for Mr. Cummings, and Mr. Johnson and I voted against Mr. Cummings. Since he had not received a majority of the votes, I declared that there had been no election, and we recessed the meeting until Saturday, March 7th. Before bringing this suit, I sent word to Mr. Cummings, through a friend, that if he would not insist on the appointment, I would agree to any man in the Steam Mill District whom Mr. Miller and Mr. Greene might nominate, except John Cummings and Henry Cummings. He did not let me know anything until we got back from Cuthbert with the injunction signed by Judge Worrill, and then I understood that he was still insisting that he had been elected."
The judge entered the following order: "The within and foregoing case coming on for a hearing, after hearing evidence and argument, the injunction heretofore granted is continued. This 21st day of March, 1942." In the bill of exceptions error is assigned both on the order overruling the demurrer and on the grant of injunction.
1. In the main brief of counsel for the plaintiff in error, it is stated that the following questions are presented: "1. Is injunction the proper remedy to prevent the discharge of his duties by a person commissioned to a public office? If not, then the demurrer should have been sustained, and the case goes out of court. 2. Is the chairman of the Board of Commissioners of Roads and Revenues authorized to vote on the filling of a vacancy to that board? And, as incidental to that question, does the executive or the judicial branch determine the result of such an election?" In reference to the first question, it is insisted that an *Page 345 
action for the writ of quo warranto instituted against Cummings would have been the proper and the exclusive remedy under the facts alleged. We can not agree to this contention, being of the opinion that the suit for injunction was a proper remedy under the facts set forth in the petition.
According to the allegations, no person had been elected or appointed to fill the vacancy caused by the death of Commissioner Childree; and this being true, any effort or proposal by Cummings to serve as a member of the board would be unwarranted, and, if pressed to the extent portended in the petition, would constitute an intrusion, and would interfere with the lawful members, including the plaintiffs Robinson and Johnson, in the performance of their official duties. As to failure of the attempted election, more will be said presently; at this point we are discussing remedy only.
"Equity jurisdiction is established and allowed for the protection and relief of parties, where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong, or relieving for injuries done." Code, § 37-102. "Equity will not take cognizance of a plain legal right . .; but a mere privilege to a party to sue at law, or the existence of a common-law remedy not as complete or effectual as the equitable relief, shall not deprive equity of jurisdiction." § 37-120. "Equity seeks always to do complete justice; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject-matter of the suit, provided the court has jurisdiction for that purpose." § 37-105. "Equity, by a writ of injunction, may restrain proceedings in another or the same court, or a threatened or existing tort, or any other act of a private individual or corporation which is illegal or contrary to equity and good conscience, and for which no adequate remedy is provided at law." § 55-101. These provisions have been adopted as a part of the Code of Georgia and state in general terms the grounds of equity jurisdiction in this State.
As to the writ of quo warranto, it is declared in the Code, § 64-201, that this writ "may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein." This section must be construed in harmony with other provisions of the Code; and when *Page 346 
this is done, it can not be held that quo warranto is the exclusive remedy where persons rightfully in office desire protection against intrusion and interference from one having no right or authority in the premises, but who will nevertheless so intrude and interfere, unless restrained by judicial action. In such case the writ of quo warranto, though itself a speedy remedy, could not supply that immediate and preventive relief which could be granted through the writ of injunction, and thus would not be as complete or effectual. Sutton v. Adams,180 Ga. 48 (178 S.E. 365); Denson v. Tarver, 186 Ga. 180
(197 S.E. 242); Patten v. Miller, 190 Ga. 105 (8 S.E.2d 776). Compare Patten v. Miller, 190 Ga. 123 (6 a), 150 (8 S.E.2d 757).
Counsel for the plaintiff in error cites, among other cases,Martin v. Rowland, 177 Ga. 363 (170 S.E. 235), where anincumbent as member of a board of education sued for injunction to restrain interference by a rival claimant; and it was held that quo warranto and not injunction was the plaintiff's remedy. That decision, though concurred in by all the Justices, apparently accorded no value whatever to the allegations as to interference, did not refer to either of the foregoing sections on equity, and in Sutton v. Adams, supra, we refused to follow it, saying, among other things: "that decision, being in conflict with the earlier full-bench decision in the case ofTalmadge v. Sutton [175 Ga. 811, 166 S.E. 240], can not be followed as authority, in view of the rule that, in the event of such conflict, the older decision is controlling." In the instant case counsel for the plaintiff in error has called our attention to the fact that we were in error in thus referring to the decision in Talmadge v. Sutton as a "full-bench decision," not that there was any dissent, but that one Justice was absent, — which at the time of the statement plainly appeared in the official report. 175 Ga. 825, supra. While we are indebted to counsel for calling our attention to this oversight on our part, we are none the less certain of the unsoundness of the decision in Marlin v. Rowland, supra, and of its invalidity as a precedent; nor can the error so made affect the result in the present case. Regarding that decision, it was further stated inSutton v. Adams, supra: "The decision in the Martin case, in holding that quo warranto would be the proper remedy of Martin, the incumbent, appears also to be inconsistent with the decision in the early case of Bonner v. Pitts, *Page 347 7 Ga. 473 (2), where it was held, all the Judge concurring, that quo warranto is the remedy of one out of office who seeks admission thereto as against the incumbent." It could also have been said that it is clearly contrary to the previous unanimous decision in Clarke County v. Gamble, 136 Ga. 382
(71 S.E. 797), where an injunction was granted to prevent one claiming the office of clerk from interfering with county commissioners in the discharge of their duties.
Another case cited for the plaintiff in error is Davis v.Dawson, 90 Ga. 817 (3) (17 S.E. 110), where it was held: "The petitioners, as citizens and taxpayers, having a remedy at law by quo warranto proceedings to inquire into the right of the defendants to hold the offices in question, and it also appearing from the allegations of their equitable petition that they were defeated candidates who might, as such, if they had so chosen, have used this remedy, the court below rightly denied the injunction and other relief prayed for. The uniform procedure act of 1887 expressly excepts from its operation the remedy by quo warranto." In the opinion, it was said: "Nor can the present petition be entertained under the uniform procedure act of 1887, providing that in the trial of civil cases, the superior courts of this State `shall give effect to all of the rights of the parties, legal or equitable, or both' [Code, § 37-901], that act expressly excepting from the operation of its provisions proceedings by quo warranto." The facts of that case were different from those alleged in the present case, and did not involve the question of interference with incumbents in office in the performance of their official duties. The reference to the uniform procedure act evidently meant that the plaintiffs' right to injunction was not enlarged by that statute, and it is equally certain that such right was not diminished thereby. InMackenzie v. Flannery, 90 Ga. 590, 597 (16 S.E. 710), it was said: "The purpose of the act was to enable parties to approach the court as a single instead of a dual forum, and by a uniform mode of procedure, whether the relief sought was legal or equitable, and to enable the court, on the trial of any civil case, to `give effect to all the rights of the parties, legal or equitable or both,' and apply such `remedies or relief, legal or equitable or both, in favor of either party, as the nature of the case may allow or require.' It did not curtail any of the judge's powers as chancellor." See Ga. L. 1887, p. 64; Code, §§ 37-901, 81-102. *Page 348 
If we should hold that under the allegations of the instant petition a suit for injunction is not an available remedy, this would necessarily mean that notwithstanding the law placed upon the remaining members of the board the duty of filling the vacancy caused by the death of their fellow member, and notwithstanding the vacancy has not been filled at all by them, they would yet be compelled by law to admit the defendant to a place among them and to allow him to participate in their deliberations and official acts until he could be ousted by the writ of quo warranto. Not only this, but they could on the same basis be forced to submit to similar conduct and interference by any person whomsoever, or by any number of persons, who might assert the right upon any pretext. The law did not require them to adopt any such course of procedure, but authorized them or any of them to sue for injunction, to prevent such confusion and interference and to preserve the status until a successor could be elected by them. The decision in Hornady v. Goodman,167 Ga. 555 (3), 570 (146 S.E. 173), referring to quo warranto as the more "speedy remedy," was not concurred in by all the Justices, and is not binding as a precedent; nor did that decision deal with interference.
But even aside from the decisions above cited, the contention as to the remedy of quo warranto, under the facts alleged, is clearly without merit, in view of the plain provisions of the Code, § 64-201, declaring that the writ of quo warranto may issue to inquire into the right of any person to any public office "the duties of which he is in fact discharging." Under this statute, the writ certainly would not be the exclusive remedy where the person sued is not in actual possession and exercising the duties of the office, regardless of whether it might be a permissible remedy in such case. This view was tentatively expressed inHolmes v. Sikes, 113 Ga. 580 (2), 582 (38 S.E. 978), although an adjudication upon the precise point was unnecessary in that case. Nothing to the contrary was held in Milton v.Mitchell, 139 Ga. 614 (2) (77 S.E. 821), or Sweat v.Barnhill, 171 Ga. 294 (6) (155 S.E. 18).
It is further insisted that interference could not be the basis of injunction here, because Cummings is not claiming an office that is held by any of the plaintiffs, and also because it appears that all of the plaintiffs are suing merely as citizens, although two of them are members of the board of county commissioners. The fact that *Page 349 
the defendant is not claiming an office held by any one of the plaintiffs would not militate against the right of Robinson and Johnson, as commissioners, to the relief of injunction to prevent such interference by one having no right to participate with them in administering the county affairs; and in so far as they are concerned, the petition was in part based expressly upon that theory. The facts that they sued also in their capacities as citizens, and that eight other citizens joined as plaintiffs with them, did not, no consideration of the petition as a whole, render it subject to general demurrer upon the theory that it was not based upon interference. Whether these features might have had the effect of making the petition duplicitous and subject to special demurrer, no such demurrer was filed. Compare CentralRailroad Co. v. Pickett, 87 Ga. 734 (13 S.E. 750);Citizens Southern Bank v. Union Warehouse Compress Co.,157 Ga. 434 (7, 10) (122 S.E. 327); Simpson v. Bradley,189 Ga. 316 (3), 319 (5 S.E.2d 893).
In view of what has been said above and in previous decisions cited herein, we do not deem it necessary to refer in particular to all the cases relied on by counsel in this connection. Under the principles stated and the applicable authorities, the court did not err in overruling the general demurrer, so far as it related to the question of remedy.
It may be said in this connection that the plaintiffs' averments as to intrusion and interference are not construed as charging that the defendant would not be a fit and proper person, if duly elected, to participate with the other members of the board in administering the county affairs, or that he would as a member be guilty of unseemly or improper conduct. The point is that if as a matter of fact there has been no election to fill the vacancy caused by the death of Childree, it would be an intrusion and interference on the part of any person who might claim election to fill the vacancy, if he should "attempt to act, to take part in and serve as a commissioner," in conjunction with the lawful members, by doing the acts set forth in the petition.
2. As stated in the preceding division, the allegations were sufficient to show that there had been no election to fill the vacancy caused by the death of Commissioner Childree, and thus that the defendant Cummings was not a member of the board. The law in *Page 350 
reference to this board provides that "Any vacancy on said board occurring by death, resignation, or disqualification shall be filled by appointment by the remaining members of the board; such appointee shall qualify and hold office for the remainder of the time of the one whom he shall succeed. The members of said board shall, upon organization, elect from their number a chairman, who shall preside and act as such during the remainder of his term of office." Ga. L. 1933, pp. 656, 658. Thus, any vacancy shall be filled by "the remaining members." The chairman was a member, and hence was one of the "remaining members." It was competent for him to vote; and where two members voted for Cummings and the chairman and another member voted against him, there was no election. The authorities cited by counsel for the plaintiff in error do not require a different conclusion. See Gostin v.Brooks, 89 Ga. 244 (15 S.E. 361); Roberts v. Dancer,20 Ga. App. 752 (93 S.E. 297); Markham v. Simpson, 175 N.C. 135
(95 S.E. 106).
3. It appeared from the petition that the defendant held a commission from the Governor, and had taken oath of office as a member of the board of commissioners. While these facts would constitute prima facie evidence in his favor, they would not be conclusive, and it could be shown that there had been no election, because of the tie vote referred to in the preceding division. State ex rel. Low v. Towns, 8 Ga. 360 (2);McCants v. Layfield, 149 Ga. 231 (2) (99 S.E. 877);Stephenson v. Powell, 169 Ga. 406 (3), 408 (150 S.E. 641).
4. The court did not err in overruling the demurrer for any reason urged; and there being evidence to support all of the material allegations of the petition, it was not error to grant an interlocutory injunction.
Judgment affirmed. All the Justices concur.