22437. GEESLIN v. OPIE et al.

ARGUED APRIL 13, 1964—DECIDED MAY 7, 1964—REHEARING DENIED MAY 19, 1964.

*Al Hatcher, H. Dale Thompson, James F. Nelson, Aretha M. Smith, E. L. Stephens, Jr.,* for plaintiff in error.

*Jones & Douglas, Paul J. Jones, Jr.,* contra.

GRICE, Justice. The right to hold the office of City Clerk of the City of Dublin is for determination here.

The litigation began when Mrs. Lena H. Opie and four members of the Board of Aldermen of the City of Dublin presented to the Judge of the Superior Court of Laurens County an application for leave to file an information in the nature of a quo warranto against Albert F. Geeslin. Leave was granted and the information was filed.

The information alleged the material facts which follow. The relator Mrs. Opie was duly elected city clerk by the mayor and board of aldermen at a regular meeting on January 20, 1964. The respondent Geeslin is performing the duties of city clerk and is claiming that office, without any legal authority. The mayor and board of aldermen, at the first regular meeting of 1964, on January 6, elected Ed Hilliard as city clerk, but he resigned without taking the required oath, giving the required bond or performing any duties of the office. At the next regular meeting, on January 20, 1964, the mayor and board of aldermen accepted Hilliard's resignation and elected the relator Mrs. Opie as clerk. She is, by virtue of these facts, the legal and lawful holder of such office, and the respondent Geeslin is wholly without any authority to hold that office and perform its duties. The prayers were that process issue, that the relator Mrs. Opie be declared the rightful holder of the office of city clerk, and for general relief.

To this information the respondent Geeslin demurred generally, that it does not set forth a cause of action and that it shows on its face that the relator is not entitled to the relief sought, and specially, that it does not allege a vacancy in the office of city clerk and does not show by what authority the relator claims to have been elected. The respondent also filed a denial to the information.

Upon the hearing in response to a rule nisi, the parties agreed for the trial judge, without a jury, to determine the issue in accordance with stipulated facts. These facts, insofar as material, may be summarized as follows.

Mr. Geeslin was elected city clerk at the first meeting of the mayor and aldermen for 1962, has performed the duties of that office since that time and is still performing such duties.

At the first regular meeting of the mayor and aldermen for 1964, Mr. Hilliard was nominated to the office of city clerk and received four "yes" votes and two "no" votes. On January 9, 1964, the mayor filed his written veto to the nomination of Mr. Hilliard. No action was taken by the board of aldermen on this veto. On January 20, 1964, Mr. Hilliard resigned, without having qualified, performed any duties, or given any bond.

Thereafter, on January 20, 1964, Mrs. Opie was nominated for the office of city clerk and received four "yes" votes and two "no" votes. Subsequently, on January 22, 1964, the mayor filed his written veto to her nomination, stating his reasons therefor. No action was taken by the board of aldermen on this veto.

On January 21, 1964, Mrs. Opie took the oath of office. She made application for bond with a named concern on January 22, 1964, but it has not yet been received by her or the City of Dublin.

At all times herein there have been six aldermen and a mayor, comprising the Mayor and Board of Aldermen of the City of Dublin.

The mayor and board of aldermen have not, during 1964, prescribed any oath or bond for the City Clerk of Dublin.

Following the hearing on the rule nisi, the trial judge entered an order holding that Mrs. Opie is the lawful city clerk, that Mr. Geeslin is illegally holding such office, and ordering him to vacate and deliver the same to her. Also, he overruled the respondent's demurrers to the information.

Those two rulings are assigned as error.

Consideration of these assignments involves two questions. Had the term of Mr. Geeslin expired so as to authorize the election of a successor? If so, did the mayor's purported veto nullify the election of Mrs. Opie?

The answers to these questions depend primarily upon construction of certain provisions of the charter of the City of Dublin (Ga. L. 1937, p. 1771, as amended by Ga. L. 1943, p. 1397; Ga. L. 1952, p. 2516; and Ga. L. 1961, p. 2598).

■ As to whether Mr. Geeslin's term had expired so as to authorize Mrs. Opie's election, we view the 1952 amendment, supra, as controlling. It amended the city's charter to provide Article II, Section 19, as follows: "There shall be a . . . city clerk. . . These officers *shall serve for one year and until their successors are elected and qualified* . . ." (Ga. L. 1952, pp. 2516, 2517), and Article II, Section 20: ". . . the mayor and board of aldermen of said city shall, on the first Monday of January, 1953, and every year thereafter elect . . . a city clerk . . ." (Ga. L. 1952, pp. 2516, 2518). (Emphasis ours).

These provisions, prescribing an annual term for the city clerk and requiring election for that office on the first Monday in each year, were not repealed by the 1961 amendments, supra, so as to make the term a permanent one except for death, resignation or discharge for cause, as contended by respondent. The purpose of the 1961 Act was the establishment of a city manager form of government.

That Act did not purport to expressly repeal any prior charter provisions as to the city clerk's term or election. The only mention of the position of city clerk is that "At the first meeting of the mayor and board of aldermen after this Act becomes law . . . they shall choose a city manager . . . a city clerk. . . The clerk and the treasurer may be the same. . ." Ga. L. 1961, p. 2598.

Nor was there any implied repeal of such prior provisions. As indicated above, the 1961 Act is silent as to the term of the city clerk or the dates for the election to that office. Instead of conflict, there is complete harmony between that Act and the 1952 Act, supra. In this connection, the rule is "Repeals by implication are not favored, and result only where the later of two Acts is clearly repugnant to the former and so inconsistent with it that the two cannot stand together, or where it is manifestly intended to cover the same subject matter of the former and operate as a substitute for it, that such a repeal will be held to result. The intention to repeal must be plain and unmistakable." *State Bd. of Educ. v. County Bd. of Educ. of Richmond County,* 190 Ga. 588, 592 (10 SE2d 369).

Under the foregoing charter provisions as to one year term and election on the first Monday of each year, Mr. Geeslin's term had expired on the first Monday of the previous year, 1963. After that time he was holding over until a successor was elected and qualified. *Shackelford v. West,* 138 Ga. 159, 162 (74 SE 1079); *Cason v. Harn,* 161 Ga. 366 (131 SE 88); *Stephenson v. Powell,* 169 Ga. 406 (150 SE 641). Thus, on January 20, 1964, the board could lawfully elect a city clerk.

■ As to the purported veto by the mayor of Mrs. Opie's nomination, we deem the 1937 Act, supra, to control. It provides, Article III, Section 35 of the city charter, as follows:

"Election by Mayor and Aldermen. All elections by the mayor and aldermen and all votes for the confirmation of appointees . . . shall be conducted as follows: As soon as the names of the candidates or appointees are announced, the clerk shall call the roll and each member of the body shall, as his name is called, vote viva voce . . . *At the conclusion of the call,* the presiding officer *shall declare the result. A majority of the whole board* shall, in all cases be necessary to elect . . ." Ga. L. 1937, pp. 1771, 1817. (Emphasis ours). Also, Article II, Section 9 provides: ". . . [the mayor] shall not be allowed to vote except . . . (1) in cases of tie vote by the aldermen on any question or measure; (2) said mayor shall have the veto power and may veto any ordinances, orders or resolutions of the city aldermen; in which event the same shall not become a law or enforceable unless subsequently passed over his veto. . . Provided that unless the mayor shall file in writing with the city clerk his veto . . . within three days after its passage, said measure shall become law as though approved by him . . ." Ga. L. 1937, pp. 1771, 1792. These provisions, as we view them, establish an expeditious procedure by which a majority of the aldermen, except in case of tie vote, elect the city clerk.

It is contended, however, that a contrary conclusion is required by the charter recital of Article II, Section 1, that "The municipal government of said city shall be vested in a mayor and seven aldermen . . . [who] shall have full power . . . to make and establish such rules, laws, ordinances, regulations, orders . . ." (Ga. L. 1937, pp. 1771, 1785), and by the above quoted provisions of Article III, Section 35 (Ga. L. 1937, pp. 1771, 1817) and Article IV, Section 2 (Ga. L. 1961, p. 2598), which make reference to elections by the "mayor and aldermen" and "mayor and board of aldermen." It is urged that these provisions require that elections be by joint action, that of the mayor by his veto power pursuant to the above quoted Article II, Section 9 of the charter (Ga. L. 1937, pp. 1771, 1792) and that of the aldermen by their votes.

This contention, as we evaluate it, is not meritorious. Provisions in the charter as to the "mayor and aldermen" and "mayor and board of aldermen," refer to the name and style of the

corporate governing body and do not empower the mayor to vote other than as expressly provided, "in cases of tie vote." Compare *Palmer v. Claxton,* 206 Ga. 860 (59 SE2d 379) (one Justice dissenting). Furthermore, such contention is negatived by the election procedure of Article III, Section 35 of the charter (Ga. L. 1937, pp. 1771, 1817), since that procedure requires that *"at the conclusion of the call* the presiding officer *shall declare the result."* (Emphasis ours). It does not provide for delaying the outcome by affording the mayor the three day charter period to decide whether to veto or approve.

Also, it is noteworthy that the veto provision authorizes the mayor to veto "ordinances, orders or resolutions" only. The action here was none of those. The decision in *Allen v. Wise,* 204 Ga. 415 (50 SE2d 69), relied upon by the respondent, involved a discharge by resolution, which the charter authorized the mayor to veto.

Thus, we hold that the mayor's purported veto was a nullity and did not affect Mrs. Opie's election.

While the charter, Article II, Section 20, provides that the city clerk "shall take such oath and give such bond . . . as the mayor and aldermen may prescribe" (Ga. L. 1952, pp. 2516, 2518), the stipulated facts show that no such oath or bond have been prescribed. Therefore, no question is presented as to Mrs. Opie's not having qualified to assume the duties of the office.

■ The rulings made in Divisions 1 and 2 are controlling adversely to the respondent Geeslin's assignments of error on the overruling of his demurrers and the order entitling the relator Mrs. Opie to the office.

*Judgments affirmed. All the Justices concur.*