### 35964. LEAGUE OF WOMEN VOTERS OF ATLANTA-FULTON COUNTY, INC. et al. v. CITY OF ATLANTA et al.

MARSHALL, Justice.

This is a continuation of *City of Atlanta v. League of Women Voters,* 244 Ga. 796 (1979).

In our earlier decision in this case, we held that the Atlanta City Council was required to call a special election to fill the office of president of the city council, which was vacated by Carl Ware on August 27, 1979. Following denial of the motion for rehearing from our prior decision and transmittal of the remittitur to the trial court, the League of Women Voters filed a supplemental complaint. In the supplemental complaint, they aver that James Bond, acting in his capacity as President Pro Tempore of the Atlanta City Council, has appointed the committee members and chairmen of the city council for the calendar year 1980. Alleging that the president pro tempore lacks authority to make such appointments, the league seeks an injunction against the city council prohibiting them from recognizing or giving effect to the appointments made by Bond. The trial court dismissed the supplemental complaint for failure to state a claim for relief, and the league appeals.

At the outset, it is helpful to recall exactly how this case arose: Carl Ware delivered to the council a letter of resignation effective August 27, 1979, and he ceased exercising any of the powers or duties of his office on that date. Under § 5-103 of the Atlanta City Charter, the city

council is required to call a special election to fill the office of council president if the vacancy does not occur within two years of the next general election, which is October 6, 1981. If the vacancy does occur within two years of the next general election, the council can elect a council president from its own members.

The council attempted to delay acceptance of Ware's resignation until October 15, 1979, thereby avoiding the necessity for calling a special election. This court, affirming the trial court, held that on August 27, 1979, Ware had ceased performing the duties of his office within the meaning of Code § 89-501 (7); therefore, the office was vacated on August 27, and the council was required to call a special election to fill the office of council president.

The committee appointments for the year 1980 were announced by Bond on December 3, 1979, at the first regular meeting of the council for the month of December. In addition to other appointments made by President Pro Tempore Bond, he appointed himself chairman of the Development Committee; he also appointed himself to be a member of the Human Resources Committee, Transportation Committee, and Committee on Council. These appointments were not finalized until being accepted by majority vote of the total membership of the council at the next council meeting on December 17. The special election was called for February 5, 1980.

1. Initially, the city argues that the plaintiffs lack standing to bring this suit, because the suit is nothing more than an attempt to regulate the internal operating procedures of the city council. In making this argument, the city stresses that § 2-204 (c) of the Atlanta City Charter gives a majority of the total membership of the council the authority to reject committee appointments made by the council president. Consequently, the city argues that committee appointments made by the council president have no effect upon the action of the council as the governing authority of the City of Atlanta.

We do not agree that this case involves only the internal operating procedures of the Atlanta City Council. The substantive question for decision is whether President Pro Tempore Bond had the authority to make Atlanta City Council committee appointments for 1980.

This question must be answered by looking to the Atlanta City Charter (Ga. L. 1973, p. 2188 et seq.) (referred to hereinafter as the city charter) and the Code of Ordinances of the City of Atlanta (referred to hereinafter as the city code). Thus, what we are concerned with in this case is the appointive authority of a municipal official under the city charter and the city code. This involves more than the internal operating procedures of the council. Questions of the nature raised here are subject to judicial review. See *Geeslin v. Opie,* 220 Ga. 53 (136 SE2d 720) (1964); *Palmer v. Claxton,* 206 Ga. 860 (59 SE2d 379) (1950); *Cummings v. Robinson,* 194 Ga. 336 (21 SE2d 627) (1942); *Gostin v. Brooks,* 89 Ga. 244 (15 SE 361) (1892); *Asbell v. Brunswick,* 80 Ga. 503 (5 SE 500) (1888).

We hold that the plaintiffs have standing to bring this suit. In this state, it is established that a citizen and taxpayer of a municipality, without the necessity for showing any special injury, has standing to sue to prevent officials of the municipal corporation from taking actions or performing acts which they have no authority to do.

" 'There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are ultra vires and beyond the scope of their authority, outside their jurisdiction, unlawful or without authority.' . . . This court has many times recognized the right of a taxpayer to apply to a court of equity to prevent public officers from taking action or performing acts which they have no authority to do. *Smith v. McMichael,* 203 Ga. 74 (45 SE2d 431), and cases there cited." *Irwin v. Crawford,* 210 Ga. 222, 224 (78 SE2d 609) (1953); *Head v. Browning,* 215 Ga. 263, 266 (109 SE2d 798) (1959). It was held by this court as early as 1871 that a court of equity is authorized to interfere to restrain the action of a municipal official if it appears that the act is ultra vires or fraudulent and corrupt. *Wells v. Atlanta,* 43 Ga. 67 (2) (1871). Accord, *Moore v. Robinson,* 206 Ga. 27 (55 SE2d 711) (1949); *Keen v. Waycross,* 101 Ga. 588 (29 SE 42) (1897). "Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that plaintiff is interested in having the laws

executed and the duty in question enforced." Code § 64-104; *Head v. Browning,* supra, and cits.; *Thomas v. Ragsdale,* 188 Ga. 238 (3 SE2d 567) (1939) and cits.

2. As we have previously stated, President Pro Tempore Bond's authority to make these committee appointments must be determined by looking to the city charter and the city code.

The powers and duties of the president of the Atlanta City Council are set out in § 2-204 of the city charter and § 1-1001 of the city code. Section 2-204 (a) of the city charter and § 1-1001 (a) of the city code state that the president of the council shall preside at the meetings of the council, but § 2-204 (a) of the charter states that the president shall not be a member of the council. See *Savage v. City of Atlanta,* 242 Ga. 671 (2) (251 SE2d 268) (1978). The essential function of the council president is to chair council meetings (see § 1-1001 (a) of the city code) and he is given "all the powers, and . . . all the duties normally encumbent upon a presiding officer." Section 1-1001 (h) of the city code. See also §§ 1-1001 (b), (c), (d), (f) and (g) of the city code.[1] But see §§ 2-204 (b) and (f) of the city charter, and § 1-1001 (i) of the city code.[2]

Section 2-204 (c) of the city charter and §§ 1-1001 (f) and 1-1022 (a) of the city code give the council president the authority to appoint the members and chairmen of such committees as may be established by the council pursuant to its rules. However, such appointments are subject to rejection by a majority vote of the total membership of the council; in addition the council president is prohibited from being a member of any

---

[1]Under these sections of the city code, the council president is given the authority to preserve the order and decorum of the council; to sign orders, resolutions, subpoenas, and other documents issued by the council; and to appoint committee members and chairmen.

[2]Under these sections of the city charter and code, the council president can vote only in the case of a tie vote of council, and he has no power to introduce ordinances or resolutions or speak to any pending matter before the council.

committee. Section 1-1022 (a) of the city code goes on to provide that these appointments shall be made by the council president annually at the first council meeting in December. However, ". . . in the year of each general city election held quadriennially on the first Tuesday after the first Monday in October, the annual committee appointments shall be made as provided herein by the incoming president of the council at the first meeting of the incoming council in January following the quadriennial general city election after the incoming president of council and incoming council have taken office; . . ."

Section 1-1001 (e) of the city code provides that, "The council shall elect a president pro tempore on an annual basis who shall preside in the absence of the president." The only situation in which the president pro tempore of the council is expressly given the authority to assume the council president's other powers and duties is when a vacancy has occurred in the office of mayor within two years of the next general election. In this situation, § 5-103 (a) (1) of the city charter provides, "The president of the Council shall assume and discharge the powers and duties of the office of mayor for the duration of the mayor's unexpired term, and a President Pro Tempore, elected in accordance with the rule of the Council, shall perform the duties of the President of the Council during such period." On the other hand, § 2-204 (d) of the city charter does state that, "The president of the council: Shall exercise all powers and discharge all duties of the mayor in the case of a vacancy in the office of mayor or during the disability of mayor . . ."

3. As a general matter, we tend to agree that the president pro tempore of the city council, when acting on behalf of the council president, exercises all of the powers and duties of the president, at least in the absence of legal restrictions. Cf. *Thompson v. Lang,* 220 Ga. 812 (141 SE2d 907) (1965). See generally 2A Antieau, Municipal Corporation Law, § 2206 (1979); 3 McQuillin, Municipal Corporations, § 12.42 (3rd Ed. 1973). However, in this case we hold that the president pro tempore of the council does not have the authority to make committee appointments for 1980, because the council president

would lack such authority in a similar situation provided for in § 1-1022 (a) of the city code. As we have previously stated, § 1-1022 (a) of the city code deprives the council president of the authority to make committee appointments in a general election year, when there will be a new incoming president for the year for which the committee appointments are made. Interpreting the intent of the charter as a whole, we hold that the president pro tempore of the city council lacks the authority to make committee appointments where, as here, the appointments are made by him at a time when a call for election of a new council president is or should have been made.

*Judgment reversed. All the Justices concur.*

SUBMITTED JANUARY 22, 1980 — DECIDED FEBRUARY 11, 1980 — REHEARING DENIED FEBRUARY 26, 1980.

*Trotter, Bondurant, Griffin, Miller & Hishon, Emmet J. Bondurant, M. Jerome Elmore,* for appellants.
*Ferrin Y. Mathews,* for appellees.